**Curtis Ray KING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–09–00381–CR.**

Court of Appeals of Texas, Beaumont.

Submitted on Jan. 24, 2011.

Decided Feb. 23, 2011.

Hubert "Bert" Steinmann,The Steinmann Law Firm, The Woodlands, for appellant.

Brett W. Ligon, Dist. Atty., Michael C. Young, Asst. Dist. Atty., Conroe, for State.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

CHARLES KREGER, Justice.

Appellant Curtis Ray King was convicted of delivery of a controlled substance and sentenced to twenty years confinement in the Texas Department of Criminal Justice. On appeal, King argues the evidence is legally insufficient to support the conviction, because there was insufficient corroboration of testimony from a confidential informant. *See* Tex.Code Crim. Proc. Ann. art. 38.141 (West 2005). We reverse the judgment of the trial court.

## BACKGROUND

King was charged by indictment with delivery of a controlled substance in a drug-free zone.[1] King pleaded not guilty and a jury found King guilty as charged in the indictment. King pleaded true to the enhancement paragraph, and the jury assessed punishment at twenty years of confinement. The trial court sentenced King in accordance with the jury's verdict. This appeal followed.

Following his arrest on November 15, 2007, Garrett Scott entered into a contract with the Montgomery County District Attorney's Office. Scott admitted he committed the offense of possession of a controlled substance, specifically cocaine, and agreed to work under the direction of Sergeant David Womack to furnish information that would lead to the arrest and indictment in eight cases "for Felony 2 or above controlled substance offenses."

David Womack, sergeant over narcotics with the Montgomery County Sheriff's Department, testified at trial. He related that he interviewed Scott to determine if Scott knew enough people to purchase narcotics from to complete the eight cases as set forth in the contract. According to Womack, Scott gave him several names. Womack did not recall if Scott provided him with King's name. Womack testified that on May 13, 2008, Scott was working with Womack as a confidential informant pursuant to his contract with the Montgomery County District Attorney's Office.

Womack testified that Scott was attempting to set up a narcotics purchase from an individual known as "5 Deuce." Womack stated that Scott had 5 Deuce's phone number and called him to set up the purchase. Scott was unable to make contact with 5 Deuce, but Scott thought he knew the general area where he could find 5 Deuce selling drugs. Womack and three other detectives met Scott at a specific location where the detectives checked Scott's person and his vehicle to make sure there was no contraband and provided Scott with impress money to purchase the narcotics. The detectives placed a recording device in Scott's shirt pocket. They followed Scott to the "Dugan area" of Conroe. Womack explained that although they followed Scott to the neighborhood, they did not follow him to the location where the transaction was to take place because of fear they would be recognized. According to Womack, Scott "went in probably two or three blocks on his own."

Based on his location, his surveillance, and on information he received from Scott regarding the transaction, Womack testified that he was able to conclude where the transaction took place. After Scott purchased narcotics in the Dugan area, Womack followed Scott to another designated location, took control of the narcotics Scott had purchased, and searched Scott's person and vehicle again for any other

---

1. The State filed a notice of enhancement based on a prior felony conviction for posses- sion of a controlled substance.

contraband. The narcotics were "off-white rock substances," which field-tested positive for cocaine.

Womack stated that neither he nor any of the other detectives involved saw the transaction occur. The audio tape of the drug transaction was played for the jury, but on agreement of the parties was not transcribed. Womack testified the only voice he was able to identify on the audio tape was the voice of Scott. He stated that he heard Scott say "who is you?" and heard the response "Blue." Womack testified that after the transaction occurred, Womack pulled up mug shots on his laptop through the Montgomery County system and searched for "a/k/a Blue." Scott identified one of the photographs as the "Blue" with whom he had made the transaction. According to Womack, the computer search yielded photographs of roughly eight to twelve persons going by the alias "Blue." Womack further testified that based on his investigation he determined that King went by the alias "Blue," and that King was the person who sold Scott the cocaine. Womack obtained a warrant for King's arrest at a later date.

Following Womack's testimony, the State presented testimony from Scott. Scott stated that he provided Sergeant Womack a list of names of potential targets; however, he acknowledged that King's name was not on the list. Scott testified that on the day of the incident in question he had completed his contract with the district attorney's office but was continuing to aid in narcotics cases in an attempt to "burn [his] trail" so that he would no longer be able to purchase drugs in the area. Scott explained that he was attempting to locate 5 Deuce to make a narcotics purchase but was told that if he was unable to locate 5 Deuce and saw someone else selling drugs to go ahead and make a purchase. Scott stated that he had

met Blue before but could not recall his name so he asked him who he was. Scott testified that he purchased cocaine from Blue at the corner of Fifth Street and Avenue J. At trial, Scott identified King as the "Blue" who sold him the cocaine on the date in question.

Scott explained that after he made the transaction, he left the area and went to meet with Sergeant Womack. Scott stated that Womack pulled up photographs on his computer and Scott pointed out the person who had sold him the cocaine. Scott stated he believed King's hair was braided at the time of the transaction. Scott acknowledged that King did not have braids at the time of trial, and Scott could not recall whether King's hair was braided in the computer image he picked out for Sergeant Womack.

Three other witnesses testified at trial. Dottie Collins, a forensic scientist with the Texas Department of Public Safety Crime Lab, testified the results of the forensic tests on the substances submitted in relation to this case were positive for cocaine. Sergeant Richard Anderson testified regarding the chain of custody of the cocaine. Calethia Benson, the only defense witness, testified that she and Scott had used cocaine together two and half weeks prior to trial.

## ANALYSIS

■ In two issues, King argues that there was insufficient corroboration of the confidential informant's testimony under article 38.141 and insufficient evidence to support the judgment. *See* Tex.Code Crim. Proc. Ann. art. 38.141. Article 38.141 provides in pertinent part:

(a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is

acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

(b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

*Id.* (a), (b).

 The State has the burden of presenting corroborating evidence at trial that tends to connect the defendant to the committed offense. *Randall v. State*, 218 S.W.3d 884, 886 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd). Traditional standards of review for the sufficiency of the evidence are not applicable to a review of covert witness testimony under article 38.141. *See Malone v. State*, 253 S.W.3d 253, 256–58 (Tex.Crim.App.2008). We review a challenge to the sufficiency of evidence corroborating the testimony of a covert witness under the same standards applied to a challenge to accomplice witness testimony under article 38.14 of the Texas Code of Criminal Procedure. *See Malone*, 253 S.W.3d at 256–58; *see also* Tex.Code Crim. Proc. Ann. art. 38.14 (West 2005). "In determining whether there is 'other evidence' tending to connect [the defendant] with the offense in an analysis under article 38.14, a court must 'eliminate all accomplice evidence and determine whether the other inculpatory facts and circumstances in evidence tend to connect the appellant to the offense.' " *Young v. State*, 95 S.W.3d 448, 451 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (quoting *McDuff v. State*, 939 S.W.2d 607, 612 (Tex.Crim.App.1997)). "The 'testimony'

that is to be eliminated from consideration is that testimony given by live witnesses speaking under oath in court." *Id.* (citing *Bingham v. State*, 913 S.W.2d 208, 210 (Tex.Crim.App.1995)). The corroborating evidence need not prove defendant's guilt beyond a reasonable doubt, but it must connect the defendant to the charged offense. *See Malone*, 253 S.W.3d at 257; *Young*, 95 S.W.3d at 451. We must review corroborating evidence in the light most favorable to the verdict. *Smith v. State*, 211 S.W.3d 476, 478 (Tex.App.-Amarillo 2006, no pet.). Where corroborating evidence required for a conviction is lacking, the defendant will be entitled to an acquittal. *Young*, 95 S.W.3d at 451 (citing Tex. Code Crim. Proc. Ann. art. 38.17 (West 2005)).

The corroborating evidence in this case is limited. Sergeant Womack is the only witness other than Scott, who testified regarding the drug transaction. Womack and several other detectives prepped Scott for the transaction and then followed Scott to the Dugan area. However, Womack testified that none of the officers followed Scott into the neighborhood where the drug transaction occurred. None of the officers saw King or witnessed the drug transaction. Womack acknowledged that he did not know "the exact location" where the transaction occurred. Womack testified that he met with Scott after the transaction and secured the cocaine. Womack further testified that he did a search on his laptop computer and pulled up photographs of persons listed in the Montgomery County system under the alias "Blue," and Scott identified a photograph of the person who sold him the narcotics.[2] Sig-

---

**2.** During the State's direct examination of Officer Womack, he testified as follows:

[State:] All right. Now, at that point in time what efforts did you take to find out who this Blue person was?

nificantly, Womack was not asked whether the photograph identified by Scott was a photograph of King. The State did not attempt to introduce the photograph that Scott identified.[3] However, Womack testified that based on his investigation he determined that it was King who sold Scott the narcotics and that King goes by the alias "Blue."

The quality of the audio-recording is extremely poor. The recording reflects that Scott said "Where 5 Deuce at?" to someone who responded "Oh, I aint' know." Thereafter, the following exchange occurred:

Scott: "Who is you?"

Response: "Blue."

Scott: "What's up Blue?"

Response: "What's up?"

Scott: "S* *t, what you doing?"

Response: "Nothing."

Scott: "What you got?"

Response: "What you need?"

Inaudible

Scott: "Come on Blue."

Inaudible

Scott: "Twenty, forty, sixty, eighty, one hundred and twenty."

Viewing the evidence in the light most favorable to the verdict, the corroborating evidence establishes, at most, only that someone who goes by the alias "Blue" sold Scott the cocaine, and that King goes by the alias "Blue." Even had Womack specifically testified that Scott identified a photograph of King as the seller, we believe that would be insufficient corroboration as it establishes nothing more than the fact that Scott said King was the seller. *See Young,* 95 S.W.3d at 451–52.

In *Young,* the confidential informant and his car were searched prior to the transaction and he was given an audio-recording device to record the transaction. *Id.* at 450. The officer gave the informant money to purchase cocaine, and the officer followed the informant to the area where the informant believed the target drug dealer would be. *Id.* However, the officer did not follow the informant into the neighborhood where he believed the transaction would take place. *Id.* From the record it was unclear how far the officer in *Young* was from the residence where he believed

---

[Womack:] At the time I had a laptop computer with me that has the ability to pull up mug shots through the county system. At that time I pulled up a/k/a Blue, which it gave me several pictures to choose from individually. Not all of them in a group.

I scrolled through there, at which time Mr. Scott was able to pick out—

[Defense counsel:] Objection, Your ·Honor....

....

THE COURT: ... Your objection ... is overruled.

[State:] I believe you just testified that Gary Scott looked at those, and he identified one of those photographs as the Blue he had just made the transaction with?

[Womack:] That is correct.

Defense counsel objected to this second question as eliciting hearsay testimony. The trial court sustained the objection on the basis that

Womack's answer was solicited through a leading question. Defense counsel did not ask the court to instruct the jury to disregard the testimony. Therefore, this testimony was properly before the jury. *See Estrada v. State,* 313 S.W.3d 274, 313 (Tex.Crim.App.2010), *cert. denied,* — U.S. ——, 131 S.Ct. 905, 178 L.Ed.2d 760 (2011).

3. The State did attempt to introduce a photograph which was purportedly a mug shot of the same person Scott identified as the Blue who sold him the cocaine. However, it was undisputed that the photograph was not the same mug shot that was identified by Scott on the day of the transaction. Defense counsel objected to the introduction of the photograph and after a lengthy bench conference, the State withdrew its question regarding the photograph. The photograph was not admitted into evidence.

the informant would be purchasing the cocaine. *Id.* When the informant returned, the officer collected the audio tape, and 19.49 grams of cocaine from the informant. *Id.* The informant identified Young as the person who sold him the cocaine, and Young was subsequently arrested. *Id.*

In addition to identifying Young as the seller, the informant also identified a photograph of Young's house as the location of the cocaine transaction. *Id.* Further, the informant identified Young as one of the voices on the audio tape that recorded the transaction. *Id.* No one else identified Young's voice on the audio tape. *Id.* The State argued that after disregarding the informant's testimony there was sufficient evidence connecting Young with the offense because (1) the State introduced the photograph of Young's house into evidence, which was identified by the informant as the location of the transaction; and (2) Young's voice was on the audio tape that recorded the transaction. *Id.* at 451. The court disagreed and explained,

> The photograph of appellant's house simply did not connect appellant to a cocaine transaction, and the State offered no other evidence that linked appellant's house to a cocaine transaction. None of the officers could verify that [the informant] went to appellant's house on the day of the cocaine transaction because, as [the informant] testified, he "went out alone." No other witnesses testified that [the informant] entered appellant's house, or that a cocaine transaction took place there. [The informant] provided the only link between appellant's house and the cocaine transaction, and, after we eliminate his testimony from our consideration, we find that the photograph of appellant's house was not "other evidence" tending to connect appellant with the cocaine transaction.

> Likewise, without [the informant's] testimony, the tape recording did not connect appellant to the cocaine transaction. Appellant did not testify in this case, and aside from [the informant], no one identified appellant's voice on the tape recording. Without [the informant's] identification of appellant's voice, we have only unidentified voices on the audio tape recording.

*Id.* at 451–52. The appellate court reversed the judgment of the trial court and rendered a judgment of acquittal. *Id.* at 452.

In the present case, Womack testified that, based on his investigation, he determined that King was the seller, but he did not explain how he made this determination. Without Scott's testimony, there is no evidence that King was the "Blue" that sold Scott the cocaine on the day in question. There is no evidence in the record that any of the officers knew King. None of the officers saw King on the day in question or witnessed the transaction. The only voice that Womack was able to identify on the audio recording was the voice of Scott. Womack did not provide testimony that connected King to the offense.

We sustain issues one and two. There is insufficient evidence to support appellant's conviction. We reverse the judgment of the trial court and render a judgment of acquittal.

REVERSED AND RENDERED.

DAVID GAULTNEY, Justice, dissenting.

I respectfully dissent. The majority says the "corroborating evidence in this case is limited," and I agree. Some corroborating evidence is all the law requires. *See Hernandez v. State,* 939 S.W.2d 173, 178 (Tex.Crim.App.1997).

Noting that the corroboration rule is "statutorily imposed" and "is not derived from federal or state constitutional principles," the Court of Criminal Appeals has declined to impose a standard sufficiency review. *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex.Crim.App.1999). "It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense." *Id.*, at 462. Circumstances that are "apparently insignificant may constitute sufficient evidence of corroboration." *Malone v. State*, 253 S.W.3d 253, 257 (Tex.Crim.App.2008). " 'Tendency to connect' rather than rational sufficiency is the standard[.]" *Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim. App.2001).

Sergeant Womack testified that before the purchase, the officers checked the informant to make sure he had no contraband, and they gave him money to make the purchase. The transaction was recorded on audio-tape. The informant returned with drugs. His voice can be heard on the audio-tape as he counts the money during the transaction. The jury heard the audio-tape in which the person talking to the informant identified himself as "Blue." Sergeant Womack testified the defendant was known as "Blue." Although the informant's out-of-court statement identifying the defendant in a photograph would not be sufficient corroboration by itself, Sergeant Womack testified further that he determined through his investigation that it was King who sold the informant the narcotics. Although King objected to Womack's testimony at trial, he does not argue in this appeal that the trial court's overruling of his objection was error. Though the evidence is limited, the issue is whether "there is *any* evidence that tends to connect the accused with the commission of the crime." *See Solomon,* 49 S.W.3d at 361 (emphasis added). In my view, the statute is satisfied in this case by the audio-tape and Sergeant Womack's testimony.