**Affirmed and Memorandum Opinion filed May 8, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

———————————

## NO. 14-10-01085-CR

———————————

**PERRY BERNARD GREEN, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

**On Appeal from the 177th District Court**
**Harris County**
**Trial Court Cause No. 1211703**

## MEMORANDUM OPINION

A jury found appellant Perry Bernard Green guilty of the offense of aggravated robbery and, after finding two enhancements true, assessed his punishment at twenty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division. On appeal, Green contends the evidence is insufficient to support his conviction because an accomplice's testimony was not corroborated by other evidence and the trial court erred by admitting a letter and certain testimony constituting inadmissible hearsay. We affirm.

On the night of March 20, 2009, Erika Martinez got off work at the Stein Mart store in the Meyerland Plaza shopping center and walked toward a nearby Target store while talking on her cell phone. As she walked, a man came up behind her and grabbed her purse. They struggled briefly, and the man threatened to hit Martinez if she did not let go of the purse. The man took the purse and jumped into the passenger seat of a waiting car. Martinez did not see the driver. The man who took Martinez's purse was later identified as Sam Hughes, the accomplice witness in this case. The driver was identified as Green.

As soon as she was attacked, Martinez began screaming. Around the same time, Michael Morris was walking out of a store near the Target with his fiancée when he heard Martinez's screams and saw Hughes take her purse. According to Morris, Hughes then jumped into a white Toyota that was waiting for him with its passenger door open. Morris attempted to stop the vehicle, but it accelerated toward him. Morris jumped onto the hood of the vehicle so he would not be run over. Morris pounded on the windshield and told Green to slow down so he could get off, but Green, whose face Morris could see, shook his head and continued driving through the shopping-center parking lot, swerving several times. Eventually Green had to slow down to turn at a blocked exit, and Morris slid off. Green and Hughes sped away. Morris received chiropractic treatment for minor injuries he received.

Morris got the license plate number of the vehicle and gave it to the police. Officer John Varela, an investigator with the Houston Police Department, determined that the vehicle was registered to Earnest Burnett. Varela interviewed Burnett, who did not match the physical descriptions of the suspects. Burnett told Varela that he had lent the vehicle to Green. At trial, over Green's objection, Varela testified that Burnett lent his car to Green in exchange for crack cocaine.

Varela obtained a photo of Green, placed it in a photo array, and showed it to Morris. Morris identified Green's photo as that of the driver. Varela then obtained a

warrant for Green's arrest. After Green was arrested, Varela showed Morris a CD video lineup including Green, and Morris again identified Green as the driver of the vehicle used during the robbery. Morris also identified Green in court.

Varela interviewed Green, who identified Hughes as his accomplice. Varela obtained a photo of Hughes, placed it in a photo array, and showed it to Martinez, who immediately selected Hughes's photo and identified him as the man who stole her purse. Varela then obtained a warrant for Hughes and arrested him.

Hughes admitted during the trial that he stole Martinez's purse, but he did not recall what he said to her as he grabbed it. According to Hughes, it was Green's idea to make some "quick money" by stealing purses and Green agreed to split the money with Hughes. Hughes testified that he intended to use his share of the money to buy drugs from Green. Green picked up Hughes and they drove to Meyerland Plaza, where they circled the parking lot several times looking for someone whose purse they could steal.

Hughes acknowledged that he had been convicted of robbery before, and had other convictions for theft and shoplifting. He also acknowledged that he entered a plea of "guilty" to aggravated robbery in the charged offense in accordance with a plea agreement with the State. The agreement was for a maximum sentence of twenty years. On cross-examination, however, Hughes agreed that he "hoped" the State would request a lesser sentence if he testified.

Hughes also testified that that while he was in jail he received two threatening letters. The prosecutor showed him a letter which Hughes identified as one of the two he had received. As discussed in an earlier bench conference, the prosecutor sought to offer the letter for a limited purpose, but defense counsel objected to the letter's "admissibility" and on Texas Rule of Evidence 403 grounds.[1] The trial court instructed the jury that the

---

[1] Outside the presence of the jury, defense counsel questioned Hughes about the letters. Hughes testified that he received two threatening letters while in jail, but he did not have the other one. When Hughes confirmed that he had never seen Green's handwriting before, counsel objected to the admission of

exhibit was "not going to be admitted for the truth of the statements therein" but would be admitted "for the limited purpose of showing the effect that the words had on [Hughes's] state of mind at the time that he received it."

Hughes then read the contents of the letter to the jury. In the letter, Hughes was instructed to execute an accompanying affidavit and return it. The letter included threats of harm if Hughes did not follow the instructions. The proposed affidavit included the following statement: "I take full responsibility for the aggravated robbery that occurred on March 20, 2009. And that Mr. Perry B. Green didn't hav[e] nothing to do with it or had any knowledge of what I did." Hughes testified that the letter made him nervous and scared because he was locked up and he feared that he might be attacked. On cross-examination, Hughes acknowledged he did not know who actually sent the letter.

## II

In his first issue, Green contends that because the testimony of Hughes, the accomplice witness, was not corroborated as required by Texas Code of Criminal Procedure article 38.14, the evidence is insufficient to support the jury's verdict. Green argues that the only evidence that Green was a party to a theft comes from Hughes. Excluding Hughes's testimony concerning the theft, Green argues, the only offense proved is aggravated assault on Morris. Without Hughes's testimony, Green maintains, there is nothing to connect Green to the theft of Martinez's purse.

## A

A person commits robbery if "in the course of committing theft" and "with intent to obtain or maintain control of the property," he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code § 29.02(a)(2).

the letter because Hughes could not identify Green's writing and "anyone could have written these letters." The prosecutor responded that even if Hughes could not prove Green wrote the letters, they were relevant to show their impact on Hughes's state of mind and his credibility before the jury. After some discussion, the trial court ruled that the letter would be admitted for the limited purpose of state of mind and not for the truth of the matter asserted. Defense counsel then objected to the letter on Rule 403 grounds.

4

A person commits theft if "he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code § 31.03(a). To prove aggravated robbery, the State must prove robbery plus an aggravating factor, such as the defendant "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2).[2] The robbery element of "in the course of committing theft" is defined as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1). The jury was authorized to convict Green for aggravated robbery, either as a principal or a party.

Article 38.14, titled "Testimony of Accomplice," requires that before a conviction may rest upon the testimony of an accomplice witness, the accomplice's testimony must be corroborated by independent evidence tending to connect the accused with the crime. Tex. Code Crim. Proc. art 38.14; *Simmons v. State,* 282 S.W.3d 504, 505 (Tex. Crim. App. 2009). In our review, we eliminate all accomplice-witness testimony from consideration and then determine whether the remaining non-accomplice-witness testimony and evidence tends to connect the accused with the commission of the crime. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); *Yost v. State*, 222 S.W.3d 865, 872 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). When there are two views of the evidence—one tending to connect the accused to the offense and the other not—then appellate courts should defer to the fact-finder's view of the evidence. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011); *Simmons,* 282 S.W.3d at 508.

To meet the requirements of the rule, the corroborating evidence does not need to be sufficient in itself to establish guilt. *Malone*, 253 S.W.3d at 257. Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). The evidence must simply link the accused in some way to the commission of the crime, and show that rational jurors could

___

[2] In this case, the indictment reflected that Green "while in the course of committing theft of property owned by ERIKA MARTINEZ, and with intent to obtain and maintain control of the property, intentionally and knowingly threaten[ed] and place[d] MICHAEL MORRIS in fear of imminent bodily injury and death" and that Green used or exhibited a deadly weapon, namely a motor vehicle. Officer Varela testified that a motor vehicle can be a deadly weapon.

conclude the evidence sufficiently tended to connect the accused to the offense. *Simmons*, 282 S.W.3d at 508. Each case must be decided on its own facts and circumstances. *Smith*, 332 S.W.3d at 442; *Gill*, 873 S.W.2d at 48. All facts, both direct and circumstantial, may be examined in ascertaining whether sufficient corroboration exists. *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991).

B

Green contends that, apart from Hughes's testimony, there is (1) no evidence that he had any knowledge of Hughes's intentions or actions, (2) no testimony that he was driving around the parking lot before the theft, and (3) no testimony that he received any of the stolen property. Therefore, Green posits, the evidence is insufficient to support his conviction for aggravated robbery.

Morris, an eyewitness and complainant, testified that he saw the man who stole Martinez's purse get in a white Toyota car that was waiting for him with its door open. Morris also testified that he got a good look at the driver of the car used in the robbery. Additionally, Morris provided police with the license-plate number of the car, which led them to Burnett, who said he had lent the car to Green the night of the robbery. Morris positively identified Green as the driver from a photo array and a video lineup. Green was arrested and questioned, and the police obtained the name of the accomplice, Hughes. Martinez then identified Hughes from a photo array containing his photo, and at trial Martinez positively identified Hughes as the person who stole her purse. Morris positively identified Green at trial as the driver of the car used in the robbery.

Thus, the evidence apart from Hughes's testimony, including Morris's positive identification of Green as the driver of the vehicle used during the robbery, tends to connect Green with the offense of aggravated robbery.[3] *See McAfee v. State*, 204 S.W.3d

---

[3] The authorities Green relies on as support for his contention on appeal are distinguishable because in those cases, no eyewitnesses other than the accomplices connected the appellant to the crime. *See Gaston v. State*, 324 S.W.3d 905, 909–11 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd), and *King v. State*, 334 S.W.3d 818, 822–23 (Tex. App.—Beaumont 2011, pet. ref'd).

868, 871–72 (Tex. App.—Corpus Christi 2006, pet. ref'd) (holding that eyewitness testimony of police officers who watched appellant meet with informant at scene of pre-arranged drug transaction and discovery of contraband found on other occupant in appellant's vehicle during traffic stop immediately after transaction was sufficient to corroborate testimony of accomplice and informant); *Green v. State*, 72 S.W.3d 420, 424–25 (Tex. App.—Texarkana 2002, pet. ref'd) (holding eyewitness testimony and appellant's close proximity to illegal drugs were sufficient to tend to connect appellant to offense of manufacture of methamphetamine). We conclude the evidence is sufficient. We overrule Green's first issue.

### III

Green briefs his second and third issues together. In these issues he contends the trial court abused its discretion by admitting, over his objections, (1) hearsay evidence consisting of a letter Hughes received in jail and (2) Varela's testimony that Burnett told him he lent his car to Green in exchange for illegal drugs. Green further argues that the errors were not harmless.

### A

We review a trial court's decision to admit evidence under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its ruling lies outside the zone of reasonable disagreement. *Id.*

Hearsay, a statement made by the declarant other than while testifying and offered to prove the truth of the matter asserted, is generally inadmissible. Tex. R. Evid. 801(d); Tex. R. Evid. 802. An extrajudicial statement or writing which is offered for the purpose of showing what was said rather than for the truth of the matter stated therein is not hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995).

7

Green first argues that Varela was allowed to testify over objection that (1) Burnett lent his car to Green, and (2) Burnett gave the car to Green in exchange for cocaine. Green maintains these statements could only be relevant for the truth of the matter asserted. He alleges that the State needed the first to show that Green had that particular car on the night of the offense and the second to argue that Green "was a robbing, assaultive, drug dealer." Green contends that the State argued these statements as truth in its closing argument and they were "available to the jury as substantive evidence."

When the prosecutor asked Varela who Burnett said had his vehicle on the night of the offense, defense counsel objected to the answer as hearsay. The trial court asked the prosecutor why the testimony was sought, and the prosecutor replied, "It's offered for the purpose of how he obtained the [d]efendant's name." The trial court overruled the objection and Varela answered, stating, "He told me the suspect's [sic] or the person that he let borrow the car that night was a man by the name of Perry and gave me Perry's address and the license plate number to the vehicle." Later, the prosecutor asked Varela what reason Burnett gave for lending his car to Green. Defense counsel also objected to this testimony as hearsay. The trial court asked why the State wanted the testimony, and the prosecutor explained that it was sought for the purpose of finding out why Burnett said that he had lent his car to Green, and it was not being offered for the truth of the matter asserted. After the prosecutor represented to the trial court that she would be able to show that Varela took action as a result of the receipt of this information, the trial court allowed the testimony. Varela then testified that Burnett said he lent the car to Green for crack cocaine. Varela also testified that he followed up on that information when he interviewed Green, and his interview "was consistent" with the information.

Although a police officer's testimony may be inadmissible due to hearsay, an officer may describe statements made by others for the purpose of showing why the

defendant became a suspect and to explain the events and circumstances leading to the defendant's arrest. *Dinkins*, 894 S.W.2d at 347; *Lacaze v. State*, 346 S.W.3d 113, 121 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Varela's testimony that Burnett told him he lent his car to Green explains how Green became a suspect and therefore the trial court did not abuse its discretion in admitting it. *See Lacaze*, 346 S.W.3d at 121.

Green also complains that the trial court's admission of the second statement enabled the State to argue that he was a "robbing, assaultive, drug dealer" as a motive for the crime. Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove. *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998); *Mayes v. State*, 816 S.W.2d 79, 88–89 (Tex. Crim. App. 1991). The testimony that Burnett lent his car to Green in exchange for cocaine is substantially similar to Hughes's un-objected-to testimony that he intended to use his share of the money from stealing purses to buy drugs from Green, as both suggest that Green was a drug dealer. And the testimony by Morris was evidence that Green was a party to robbery and assault. Therefore, any error in admitting the second statement was harmless. *See Mayes*, 816 S.W.2d at 88–89.

2

Green also contends the trial court should not have admitted the letter Hughes testified he received while in jail because it constituted hearsay. At trial, Green objected that the letter was not admissible because it was not authenticated and on Rule 403 grounds, but he did not object that the letter constituted hearsay. Consequently, any claim he may have had that the exhibit was hearsay was not preserved for appeal. *See* Tex. R. App. P. 33.1; *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000); *see also Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996) ("[A]ll existing authority holds the admission of hearsay must be preserved with a timely and specific objection to the evidence.").

Finally, Green contends that the trial court's admission of hearsay evidence was harmful because it deprived him of his right to confront witnesses in violation of the Confrontation Clause of the United States Constitution. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). But Green did not object to any of Varela's testimony or the admission of the letter on the ground that he was deprived of the right to confront and cross-examine witnesses; therefore, his complaint is not preserved. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *Lacaze*, 346 S.W.3d at 122 ("[A]n objection to hearsay does not preserve error based on a violation of the Confrontation Clause.").

We therefore overrule Green's second and third issues.

\* \* \*

The trial court's judgment is affirmed.


/s/ Jeffrey V. Brown
Justice


Panel consists of Justices Frost, Brown, and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).