**Tyrone LACAZE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–10–00395–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 7, 2011.

sufficiency of the evidence supporting para-    graph 11.

Casey Garrett, Houston, for appellant.

Carol M. Cameron, Houston, for state.

Panel consists of Justices ANDERSON, SEYMORE, and McCALLY.

## OPINION

SHARON McCALLY, Justice.

A jury convicted appellant Tyrone Lacaze of capital murder, and the court sentenced him to imprisonment for life without parole. Appellant challenges his conviction in four issues. In his first three issues, appellant claims the trial court (1) erred by admitting hearsay testimony, (2) violated his right to confrontation, and (3) made an impermissible comment on the weight of the evidence in the jury charge. Appellant also argues the evidence is insufficient to support his conviction due to a lack of corroboration of an accomplice witness. We affirm.

### BACKGROUND

Appellant was charged with the October 8, 2006 murder of fifteen-year-old Delores Riley (also known as Dee Dee). The State alleged that appellant murdered Dee Dee in retaliation for her providing information to police about the September 17, 2006 murder of Dee Dee's boyfriend, Dameion Vance.

Vance was murdered outside the Riley apartment. Despite family warnings to "be quiet," Dee Dee talked to police shortly after the murder. Sergeant Norman Ruland of the Houston Police Department (HPD) testified that Dee Dee reported seeing Vance and Eric Watson get into a fist-fight on September 17. When Eric lost, he said he would return and kill Vance. Dee Dee saw Eric return with his brother and cousin, Joseph Watson and Melvin Lamerson. The men were headed in Vance's direction, and they told Dee Dee to go inside her house. A short time later, Dee Dee and others inside her apartment heard gunshots. Among other evidence, police recovered thirty-one 9mm cartridge casings from the crime scene.

According to Sergeant Ruland, Dee Dee said Eric threatened her a day later "not to be running her mouth." On September 28, Eric was arrested for the Vance murder. Around October 5, Dee Dee told Sergeant Ruland that she was attacked by Kevin Lamerson, a relative of Eric, Joseph, and Melvin. Kevin had threatened, punched, and thrown Dee Dee on the ground. On October 6, Kevin was arrested for retaliation. Ashley Riley, Dee Dee's older sister, also testified that she had interrupted Joseph choking Dee Dee outside the Riley apartment and that Joseph was later arrested.

During the afternoon on October 7, appellant and Sendreka Nelson (also known as Peg or Pig)—a family friend who lived in the same apartment complex—came to the Riley home. Ashley was home at the time, but Dee Dee was not. Ashley testified that Nelson used the phone while appellant ate some ice. After about ten minutes, the couple left. According to Ashley, at about 11:00 p.m. that night, Nelson returned to the Riley home. Nelson made a phone call and then chatted with Dee Dee while Dee Dee was taking a bath. Nelson later told Ashley that Dee Dee was "gone," and then Nelson left the apartment.

At trial, Nelson testified as an accomplice witness. She explained that she and appellant drove to Dee Dee's home on the night of the murder, and appellant waited outside while Nelson asked Dee Dee to come for a ride in her car. Appellant drove the vehicle to his friend's apartment complex, and during the drive, he asked Dee Dee what she knew about the Vance murder and what she had said to police. Dee Dee told appellant that she had talked with police about Eric killing Vance and Kevin assaulting her. When they arrived at the destination, appellant told both girls to get out of the car. Nelson and Dee Dee walked away from the car, but then appellant started shooting at Dee Dee. She was struck with four bullets, three of which were fatal. Among other evidence, police later recovered ten 9mm cartridge casings from the scene.

Nelson testified she ran back to the car during the shooting, and appellant drove the couple away from the scene. He said he shot Dee Dee ten times and he had one more bullet. He said he shot Dee Dee because Eric did not kill Vance—appellant and Joseph had actually killed Vance. Appellant did not want Dee Dee to come to court. According to Nelson, before the couple fled to New Orleans several weeks later, appellant gave the murder weapon to Joseph.

Dee Dee's body was discovered shortly after the murder, but it was not identified until October 21. In the meantime, a friend of the Riley family, Jeffery Peveto, was robbed at gunpoint in his apartment at about 3:15 p.m. on October 13. The assailant fired a gun during the robbery, and police later recovered one 9mm cartridge casing from the scene. Peveto made a tentative identification of appellant as the robber when police showed him a photo spread in December 2006. He made the identification again from the same photo spread in July 2007, and he made an in-court identification. At trial, a photo of Joshua Lamerson was shown to Peveto; he denied that the man in the photo was the robber.

At about 11:00 p.m. on October 13, Joshua Lamerson was arrested with a 9mm pistol. Ballistics testing of spent cartridge casings from the pistol matched fifteen of the cartridge casings recovered from the Vance murder crime scene, all of the cartridge casings recovered from the Riley murder crime scene, and the cartridge casing recovered from the Peveto robbery. Further, police discovered from Nelson's

cell phone records that her phone had been used to call the Riley home, and a call was made from the Riley home to the cell phone on the night of the murder. Data from cell phone towers showed that the cell phone was in the area of the Riley home and then traveled to the area of town where Dee Dee's body was found at a time consistent with Dee Dee's disappearance and murder. Police initially arrested Joshua and Nelson for the Riley murder, but those charges were later dropped.

The State charged appellant with the capital murder of Dee Dee based on retaliation. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West 2011). The jury found appellant guilty, and because the State did not seek the death penalty, appellant received an automatic sentence of life without parole. *See* Tex. Penal Code Ann. § 12.31 (West 2011).

### Corroboration of Accomplice Witness Testimony

In his fourth issue, appellant challenges the sufficiency of the evidence corroborating the testimony of the accomplice witness, Sendreka Nelson.

■ A conviction obtained in reliance upon accomplice testimony must be supported by sufficient corroborating evidence tending to connect the defendant with the offense committed. Tex.Code Crim. Proc. Ann. art. 38.14 (West 2005). When reviewing the sufficiency of the evidence to corroborate accomplice testimony, we eliminate the accomplice testimony and then examine the remaining portions of the record to see if there is any evidence that tends to connect the defendant with the commission of the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex.Crim.App. 2008). The corroborating evidence need not rise to the level of proof beyond a reasonable doubt. *Id.* Instead, the evidence must simply link the defendant to

the commission of the offense and show that rational jurors could conclude that the evidence sufficiently tended to connect the defendant to the offense. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex.Crim.App. 2009). We view the evidence in the light most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim.App.2008).

■ Appellant primarily argues that Peveto, who provided the identification of appellant from an aggravated robbery, was not credible because he was "an admitted crack addict" at the times he made identifications from two photo spreads, and he was able to make only a tentative identification of appellant when he viewed the photo spread the first time. However, we must defer to the jury on the credibility determination and assume that the jury found Peveto to be a credible witness in his identification. *See id.*

Appellant further argues that even if the jury believed Peveto, the evidence does not corroborate Nelson's testimony because the aggravated robbery had "no relation to the charged offense other than the fact that the same firearm was used." But the fact that the same firearm was used by appellant connects him to the murder weapon, thus corroborating Nelson's testimony. *See Cockrum v. State*, 758 S.W.2d 577, 582 (Tex.Crim.App.1988) ("Proof that connects an accused to a weapon used in an offense is proper corroborative evidence."). Forensic testing also linked the same firearm to the Vance murder, and Dee Dee was cooperating with police to find Vance's killers. Additional corroborating evidence included Ashley's testimony placing appellant with Nelson inside the Riley home on the day of the murder. *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim.App.1997) ("Evidence that the defendant was in the company of the accomplice

at or near the time or place of the offense is proper corroborating evidence.").

After eliminating the accomplice testimony from our consideration and examining the non-accomplice evidence in the light most favorable to the verdict, we conclude rational jurors could find that the non-accomplice evidence tends to connect appellant to the offense.

Appellant's fourth issue is overruled.

### JURY CHARGE

In his third issue, appellant argues that the trial court impermissibly commented on the weight of the evidence by including "corroboration" in the list of acceptable uses for the extraneous offense evidence admitted at trial. He argues in particular that "[t]he inclusion of 'corroboration' essentially told the jury where they should look to bind up the State's case and find the necessary evidence for conviction."

The trial court charged the jury as follows:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the intent, motive, relationship of the parties, identity of the defendant, or corroboration, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

■■■ A trial court must submit a charge to the jury that instructs them on the law to be applied to the case, but the court may not submit a charge that comments on the weight of the evidence. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). A trial court comments on the weight of the evidence if the charge "assumes the truth of a controverted issue," *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim.App.1986), or "directs undue attention" to particular evidence, *Giesberg v. State*, 945 S.W.2d 120, 124 (Tex.App.-Houston [1st Dist.] 1996) (citing *Hawkins v. State*, 656 S.W.2d 70, 73 (Tex.Crim.App. 1983), *aff'd*, 984 S.W.2d 245 (Tex.Crim. App.1998)). In determining whether the charge improperly comments on the weight of the evidence, we consider the court's charge as a whole and the evidence presented at trial. *See Russell v. State*, 749 S.W.2d 77, 79 (Tex.Crim.App.1988).

■■■ The parties agree that a trial court should instruct the jury on the proper, limited use of extraneous offense evidence because an accused may only be tried for the offense charged and not with being a criminal generally. *See Owens v. State*, 827 S.W.2d 911, 914 (Tex.Crim.App. 1992). Thus, it is proper for a trial court to submit a charge regarding extraneous offense evidence that (1) explains the jury may not consider the extraneous offense evidence, if any, unless the jury concludes beyond a reasonable doubt that the defendant committed the extraneous offense, (2) includes a list of the acceptable uses of extraneous offense evidence applicable to the facts of the case, and (3) explains the jury may not consider the evidence for any purpose other than for the uses specifically identified in the charge. *See Purvis v. State*, 124 Tex.Crim. 519, 63 S.W.2d 1030, 1032 (1933), *cited with approval in Gillon v. State*, 492 S.W.2d 948, 949 (Tex.Crim. App.1973); *Blackwell v. State*, 193 S.W.3d 1, 15–16 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). Such a charge "applies the law to the facts of the case to the

extent it is possible to do so without commenting on the weight of the evidence." *Brooks v. State*, 580 S.W.2d 825, 833 (Tex. Crim.App.1979) (holding that an extraneous offense charge was proper).

Rule 404(b) of the Texas Rules of Evidence identifies a number of acceptable uses for extraneous offense evidence, such as intent or identity, which are frequently included in jury charges. *See, e.g., Blackwell*, 193 S.W.3d at 15–16; *see also* ELIZABETH BERRY & GEORGE GALLAGHER, TEXAS CRIMINAL JURY CHARGES §§ 3:1420, 3:1430 (Supp. 2010). Additionally the Court of Criminal Appeals has explained, "We unequivocally hold that extraneous offense evidence is admissible under Rule 404(b) for the purpose of corroboration under Article 38.14." *Lawton v. State*, 913 S.W.2d 542, 553 n. 9 (Tex.Crim.App.1995).

■ Accordingly, we hold that the trial court did not err by including "corroboration" in the list of acceptable uses for extraneous offense evidence. The corroborative nature of the extraneous offense evidence was not unduly emphasized by including "corroboration" in the instruction. "Corroboration" was given no more or less emphasis than any other proper use of the extraneous offense evidence, and the potential use of evidence for corroboration was conditioned with the limiting language "if any." *See Miller v. State*, 753 S.W.2d 473, 476 (Tex.App.-Houston [1st Dist.] 1988, pet ref'd) (holding that use of the word "murder" in the jury charge was not a harmful comment on the weight of the evidence because the court included limiting language "if any").

Appellant's third issue is overruled.

### HEARSAY

In his first issue, appellant contends that the trial court erred "throughout the trial by permitting the State's witnesses to testify to hearsay." The State responds that the issue should be overruled because (1) appellant waived any error by failing to identify the erroneously admitted evidence with sufficient specificity in his brief, (2) appellant failed to preserve error by not making evidentiary objections during trial, (3) the trial court did not err in admitting the evidence because it was not hearsay— not offered for the truth of the matter asserted—and, (4) any such error was harmless because identical evidence was admitted elsewhere without objection.

### A. Waiver and Preservation of Error

■ An appellant's failure to include citations to the record in his or her brief may constitute waiver of error on appeal. *See Muhammed v. State*, 331 S.W.3d 187, 195 (Tex.App.-Houston [14th Dist.] 2011, pet. ref'd); *see also* TEX.R.APP. P. 38.1(i). In his brief, appellant complains broadly about the admission of hearsay testimony, but he also provides a number of specific citations to the record and identifies some of the complained-of testimony.[1] We hold these record references are sufficient to satisfy the briefing requirement of Rule 38.1(i).

■ But an appellant must also preserve error in the trial court based on the erroneous admission of evidence by making a specific and timely objection and obtaining a ruling from the trial court. *See* TEX.R.APP. P. 33.1(a); *see also* TEX.R. EVID. 103(a)(1). The appellant must object each time evidence is offered unless the appellant receives a running objection or requests a hearing outside the presence of the jury. *Dreyer v. State*, 309 S.W.3d 751, 754 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (citing *Haley v. State*, 173 S.W.3d

---

1. Appellant cites to the following portions of the record: 3 RR 57, 3 RR 60, 3 RR 64–70, 3 RR 73–78, 3 RR 83, 3 RR 87–88; and 4 RR 59–60.

510, 516–17 (Tex.Crim.App.2005)). Only some of the pages of the record cited in appellant's brief contain objections—and only to particular questions without running objections. Although appellant failed to object to each question on the referenced pages of the record, we hold that appellant has preserved error based on the admission of evidence for any testimony on the referenced pages for which a hearsay objection appears.

Thus, appellant has preserved error for the following ten questions and answers:

### Testimony of Sergeant Norman Ruland

1. *3 RR 57*

Q Why was Ashley Riley calling you?

A Because Dee Dee had gone missing.

2. *3 RR 60*

Q How was [Sergeant Manny Cruz] able to make that connection [that he believed his murder victim was Dee Dee]?

A The family had contacted him. Apparently they had seen a—they had done a sketch on the unknown black female and a clothing description of what she was wearing. And so, the family had contacted Manny. And he took the sketch and the clothing description over there to them. They looked at it and said yes, that's going to be—

3. *3 RR 64*

Q What information did [Ashley Riley] give that helped you in your investigation the second time that you talked to her about the disappearance of Delores or Dee Dee?

A She gave me a name.

4. *3 RR 67*

Q And when you said those names [the Watsons and Lamersons] did that ring a bell with [Officer Roland Walker, a security officer employed by Dee Dee's apartment complex]?

A Yes, it did.

5. *3 RR 69*

Q And what were the results [of ballistics testing] that you knew of?

A Ms. Downs advised me that she had scientifically linked the gun taken from—that Joshua Lamerson was arrested with to the murder to—as being the—I'm sorry. Let me rephrase that. Ms. Downs advised me that the shell casings at the Delores Riley murder scene and the shell casings at the Dameion Vance murder scene were fired in the weapon that Joshua Lamerson was arrested with.

6. *3 RR 70*

Q And do you know what happened to the gun when Joshua Lamerson was arrested with it?

A Yes

Q And what was that?

A Tagged into the HPD property room.

7. *3 RR 73–74*

Q At that time do you know whether or not the name of T or Tyrone had come up at some point in discussions that [other investigating officers] had or that you had?

A The name T.

8. *3 RR 75*

Q And what were those names that [Joshua Lamerson] mentioned?

A The names he mentioned to me were T, Tyrone and Peg.

9. *3 RR 8[2]*

Q And who did [Nelson] say shot Delores Riley?

A A man by the name of Tyrone Lacaze.

### Testimony of Officer Gregory Breaux

10. *4 RR 59*

**Q** What did they tell you happened?"

**A** Well, we interviewed Mr. [Peveto] first and he went on to tell us his story about what occurred. That he was inside—they were inside the apartment. He was—just got paid on that day. And he was sitting there doing a crossword puzzle when he heard a knock at the door. And they looked out and saw it was a gentleman and then he decided he wasn't going to answer the door and went back and sat down.

**B. Admissibility of the Evidence and Harmlessness of Any Error**

We review a trial court's admission of evidence for abuse of discretion. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim.App.2002). The trial court does not abuse its discretion unless the court acts outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App.2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).

Hearsay, a statement made by the declarant other than while testifying and offered to prove the truth of the matter asserted, is not admissible. Tex.R. Evid. 801(d); Tex.R. Evid. 802. Although a police officer's testimony may be inadmissible due to hearsay,[2] an officer may describe statements made by others for the purpose of showing why the defendant became a suspect and to explain the events and circumstances leading to the defendant's arrest. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex.Crim.App.1995);

*Reed v. State*, 794 S.W.2d 806, 809 (Tex. App.-Houston [14th Dist.] 1990, pet ref'd).

Most of the testimony recited above falls within the holding of *Dinkins* as an explanation of how appellant became the suspect. In particular, Officer Ruland took the jury step-by-step through the investigation to explain how all of the pieces of evidence fit together to make appellant the suspect in Dee Dee's murder. His testimony that related conversations with Joshua Lamerson and Sendreka Nelson helped explain why the investigation turned away from those two suspects and toward appellant.

Further, appellant correctly acknowledges in his brief that "the trial court stated, over and over, that the evidence 'is not admitted for the truth of the matter asserted.'" For all but one of the excerpts above, the trial court explicitly stated that the testimony was not admissible for the truth of the matter asserted but was only admissible to explain the officers' actions.[3] The trial court acted in accordance with the Rules of Evidence in limiting the admissibility of the out-of-court statements for a particular purpose. *See* Tex.R. Evid. 105(a). Appellant argues that the trial court "never directly or concisely or clearly explained this instruction to the jury," and the jury "should not have been expected to understand the finer points of hearsay like 'the truth of the matter asserted.'" But we generally presume that juries follow instructions. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex.Crim.App. 1996); *Waldo v. State*, 746 S.W.2d 750, 754 (Tex.Crim.App.1988).[4] And any error with

**2.** *See Schaffer v. State*, 777 S.W.2d 111, 114–15 (Tex.Crim.App.1989).

**3.** For the ninth excerpt, the prosecuting attorney explained in front of the jury that the evidence sought to be admitted was "not for the truth of the matter asserted."

**4.** *See also Sallings v. State*, 789 S.W.2d 408, 416–17 (Tex.App.-Dallas 1990, pet. ref'd) (concluding the arrest warrant was not improperly admitted as hearsay because the court instructed the jury under Rule 105(a) that the statements in the warrant should not be considered for their truth); *Gilmore v.*

respect to the hearsay instruction has not been preserved for our review in the absence of appellant's request for a different instruction in the trial court. *See* Tex.R. Evid. 105(a); *Thacker v. State*, 999 S.W.2d 56, 61 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd).

The trial court did not act outside the zone of reasonable disagreement and thus did not abuse its discretion in admitting the challenged evidence. Regardless, even if the trial court erred in admitting some of the testimony, any such error was harmless in this case. We may not reverse a conviction for nonconstitutional error unless the error affects the defendant's substantial rights. *See* Tex. R.App. P. 44.2(b). The admission of inadmissible hearsay is nonconstitutional error, and such error does not affect a substantial right if, after examining the record as a whole, we are reasonably assured that the error did not influence the verdict or had but a slight effect. *Chapman v. State*, 150 S.W.3d 809, 814 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). Accordingly, "the improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial." *Id.; accord Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim.App.1999); *Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App.1998).

Here, other witnesses who testified at trial provided most of the substantive complained-of testimony. The witnesses included Ashley Riley, Kim Downs, Jeffrey Peveto, Sendreka Nelson, and Mark Karl, a property disposition officer with the homicide division of the HPD. After examining the record as a whole, we are reasonably assured that the error did not influence the verdict or had but a slight effect.

Appellant's first issue is overruled.

### CONFRONTATION OF WITNESSES

In his second issue, appellant argues that the trial court violated his right to confront and cross examine witnesses when the court permitted Sergeant Ruland to repeat out-of-court statements made by non-testifying witnesses. The State argues that this issue should be overruled because (1) appellant waived any error by failing to identify the erroneously admitted evidence with sufficient specificity in his brief, and (2) appellant failed to preserve error by not making the proper objections during trial.

Appellant correctly notes that counsel repeatedly objected to hearsay. But an objection to hearsay does not preserve error based on a violation of the Confrontation Clause. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex.Crim.App.2005); *see* Tex.R.App. P. 33.1(a). Appellant does not cite to any objection based on a violation of the Confrontation Clause, and this court has found none in the record. According-

---

*State*, 666 S.W.2d 136, 150 (Tex.App.-Amarillo 1983, pet. ref'd) (concluding the evidence was not hearsay in part because the trial court instructed the jury as to the proper purpose for considering the evidence and explained that the evidence should not be considered for the truth of the matters asserted therein).

We also note that the Fort Worth Court of Appeals, in an unpublished decision, reached the same result in a situation similar to appel-

lant's. *See Williams v. State*, No. 2–03–148–CR, 2004 WL 2320370, at *3 (Tex.App.-Fort Worth Oct. 14, 2004, pet. ref'd) (mem. op., not designated for publication) (finding no error when the officer testified about statements made by the complainant because the trial court stated that it was not admitting the evidence for the truth of the matter asserted but rather to show the officer's motivation for later actions; presuming that the jury followed the limiting instruction).

ly, appellant has failed to preserve this alleged error for appeal.

Appellant's second issue is overruled. Having overruled all of appellant's issues, we affirm the trial court's judgment.