

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-11-00847-CV

In the **MATTER OF H.T.S.**

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-JUV-02001
Honorable Carmen Kelsey, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:         Karen Angelini, Justice
                 Steven C. Hilbig, Justice (concurring in the judgment only)
                 Marialyn Barnard, Justice

Delivered and Filed:  December 31, 2012

AFFIRMED

A jury found appellant H.T.S., a juvenile, engaged in delinquent conduct by committing indecency with a child. The trial court placed H.T.S. under the supervision of the Bexar County Juvenile Probation Department for a period of 7.5 years, but determined he could remain in the care, custody, and control of his parents during the supervisory period. On appeal, H.T.S. raises three points of error, contending: (1) the trial court erred in permitting the State to add an expert witness to its list; (2) the trial court erred in admitting certain evidence; and (3) the evidence was legally and factually insufficient to support the jury's verdict. We affirm the trial court's judgment.

## BACKGROUND

On May 18, 2010, the Live Oak swimming pool opened to those interested in joining the swim team and to those who were taking swimming lessons. H.T.S., a juvenile, was at the pool that day. At some point, H.T.S began to help six-year-old A.V., who was practicing in one of the pool's swimming lanes. A.V. was supposed to swim freestyle and then switch to a backstroke. As A.V. swam, H.T.S. held her up by placing his hand on her stomach or on her back. Initially, there was another young boy in the lane with them, but he got out of the pool, leaving A.V. and H.T.S. alone in the swim lane.

According to A.V., while she was swimming, H.T.S. put his hand under her shorts and touched and "pinched" her "privates." A.V. showed the jury on an anatomically correct doll that her "privates" referred to her female sexual organ, i.e., vagina. A.V. testified H.T.S. touched her "privates" several times, outside her shorts and inside her shorts. At some point, H.T.S. kept his hand on her "privates" and eventually placed his finger inside her "privates." A.V. stated it was uncomfortable and hurt so she began to kick to make H.T.S. stop. A.V. said she did not yell for help because she was afraid H.T.S. might hurt her or her mother.

When the swimming lesson finally ended, A.V. got out of the pool and found her mother. A.V. told her mother what happened. A.V.'s mother, B.V., informed a pool official and the swim coach about A.V.'s claims. A.V. pointed to H.T.S., identifying him as the one who touched her. H.T.S. ran when he saw A.V. pointing at him.

The police were called. An officer spoke to A.V. and officials at the pool. A.V. was taken for a sexual assault examination. Police later spoke with H.T.S. and his father. Ultimately, H.T.S. was charged by petition with engaging in delinquent conduct, namely, aggravated sexual assault of a child and indecency with a child by contact. A jury found only that H.T.S. engaged

in delinquent conduct by committing indecency with a child by contact. After adjudication and sentencing, H.T.S. timely perfected this appeal.

## ANALYSIS

On appeal, H.T.S. raises three points of error. In his first point, H.T.S. contends the trial court erred when it permitted the State to add an expert to its witness list. H.T.S. next claims the trial court erred in admitting hearsay evidence from two State's witnesses. Finally, H.T.S. asserts the evidence was legally and factually insufficient to support the jury's indecency finding. We will review each contention in turn.

### *Late-Added Expert*

As noted above, H.T.S. complains the trial court erred in allowing the State to add an additional witness, an expert, to its witness list. H.T.S. contends the trial court erred because the witness was added without the notice required by Article 39.14(b) of the Code of Criminal Procedure and in contravention of the trial court's discovery order.

### *Standard of Review*

When a trial court permits a witness to testify that was not included in the State's witness list, the standard of review is abuse of discretion. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); *Hightower v. State*, 629 S.W.2d 920, 925 (Tex. Crim. App. [Panel Op.] 1981); *Lemasurier v. State*, 91 S.W.3d 897, 900 (Tex. App.—Fort Worth 2002, pet. ref'd). In determining whether the trial court abused its discretion, we consider: (1) whether the prosecutor exhibited bad faith in failing to disclose the name of the witness at an earlier time; and (2) whether the defendant could reasonably anticipate that the witness would testify despite the State's failure to include the witness on its witness list. *Martinez*, 867 S.W.2d at 39. "[U]nless the defendant can show that the omission of a name from the State's witness list resulted from the prosecutor's bad faith, or that the calling of such witness could have reasonably been

anticipated by the defendant, the trial court's decision to allow the testimony will not be disturbed on appeal." *Castaneda v. State*, 28 S.W.3d 216, 223 (Tex. App.—El Paso 2000, pet. ref'd).

*Application*

Texas law is clear that upon request by the defense, the State is required to disclose the witnesses it intends to call at any state of the trial. *Beets v. State*, 767 S.W.2d 711, 747 (Tex. Crim. App. 1987). With regard to expert witnesses, the disclosure requirement has been codified. *See* TEX. CODE CRIM. PROC. art. 39.14(b) (West 2011). Article 39.14(b) provides that on motion and notice, a trial court may order one or more of the parties to disclose to the party making the motion the name and address of each expert the nonmovant intends to use to present evidence at trial. *Id.* If the court orders such disclosure, it must specify the time and manner of disclosure, but the disclosure must be made not later than the twentieth day before the date the trial begins. *Id.*

It is undisputed that H.T.S. filed a motion asking the State to disclose the names, addresses, and professions of all the experts it intended to call as witnesses at trial. The trial court granted the motion and ordered the disclosure, but did not set a due date for disclosure. Accordingly, the State was required to disclose the names of its expert witnesses not later than the twentieth day before trial. *Id.* Trial began on September 26, 2011, so the State's disclosure of expert witnesses was due on or before September 6, 2011.

The State provided H.T.S. with a list of expert witnesses on March 16, 2011, listing three witnesses: Anita Seamans, a sergeant with the Live Oak Police Department; Cynthia Ann Garcia, a Childsafe Sexual Assault Nurse Examiner; and Caroline Brionnes, a Childsafe Forensic Interviewer. However, on September 27, 2011, the second day of trial, the State filed a "State's Disclosure of Additional Expert Witness to be Called in the Guilt/Innocence or Punishment

Phase of Trial." In that disclosure, the State listed an additional expert witness, Dr. Nancy D. Kellogg. This disclosure was clearly untimely under Article 39.14(b).

H.T.S. objected to the State's untimely disclosure, referring the court to Article 39.14(b) as well as the court's order granting H.T.S.'s request for disclosure of the State's experts. H.T.S. asked that the trial court to exclude Dr. Kellogg as a witness. After hearing argument from all parties, the trial court ultimately allowed Dr. Kellogg to testify.

Initially, the State contends Article 39.14(b) does not apply in this case because, as the State informed the trial court, it intended to call Dr. Kellogg as a rebuttal witness and did use her in that capacity. The State points out there are numerous cases holding the State is not required to disclose rebuttal evidence or rebuttal witnesses because it is unreasonable to require the State to anticipate the need to rebut defense evidence that it could not foresee. *See, e.g., Beets*, 767 S.W.2d at 747–48; *Elkins v. State*, 543 S.W.2d 648, 649 (Tex. Crim. App. 1976); *Hoagland v. State*, 494 S.W.2d 186, 189 (Tex. Crim. App. 1973).

We need not decide this issue, however, because even if Article 39.14(b) applies to rebuttal witnesses, *see Depena v. State*, 148 S.W.3d 461, 465 (Tex. App.—Corpus Christi 2004, no pet.), there is nothing in this record showing the State acted with bad faith in failing to disclose Dr. Kellogg in a timely manner pursuant to the statute.

H.T.S. argues the prosecutors acted in bad faith in failing to disclose Dr. Kellogg because they willfully withheld her name despite the discovery order. H.T.S. contends "Dr. Nancy Kellogg is a well-known and frequent expert witness for the State in cases dealing with sexual abuse of a child. It is obvious the State had knowledge of their intended use of Dr. Kellogg, but chose not to give notice to [H.T.S.'s] trial counsel." However, the record contains no evidence the State acted in bad faith in failing to include Dr. Kellogg on its original expert witness list.

Soon after the trial court granted H.T.S.'s discovery motion, the State provided a list of three experts, though admittedly the list did not include Dr. Kellogg. At trial, when asked why Dr. Kellogg had not been disclosed previously, the prosecutors advised the trial court they had been assigned to the case a mere two weeks before trial. The record suggests, if anything, that after reviewing the file and noting that H.T.S. intended to call a sexual assault expert, the new team of prosecutors decided it might be necessary to have a sexual assault expert available for purposes of rebuttal. Moreover, the State did provide notice, albeit untimely, as opposed to providing no notice and simply presenting Dr. Kellogg at the time of rebuttal. *See Castaneda*, 28 S.W.3d at 223 (holding trial court did not abuse its discretion in finding that providing notice to defense one week before calling previously undisclosed witness did not indicate bad faith). Accordingly, while there might be evidence of negligence on the part of the State, we hold H.T.S. failed to establish the prosecutors acted in bad faith and overrule the first point of error.[1] *See id.* (holding that unless defendant can show omission of name from State's witness list resulted from State's bad faith, trial court's decision to allow testimony will not be overturned).

Additionally, even if we were to find H.T.S. established bad faith on the part of the State, we hold the trial court's decision to permit Dr. Kellogg to testify would not entitle H.T.S. to a reversal. The error complained of by H.T.S. is nonconstitutional error, and is therefore governed by Rule 44.2(b). That rule states that nonconstitutional error must be disregarded unless it is found to have affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b). The improper admission of evidence is not reversible, i.e., does not affect a defendant's substantial rights, "if the same or similar evidence is admitted without objection at another point in the trial." *Lacaze*

---

[1] Despite our holding, which is in accord with existing authority, we clearly do not condone the State's actions in failing to comply with the mandates of Article 39.14(b). Given the bad faith standard, it is nearly impossible to find an abuse of discretion in the event a party fails to comply with the statute, but this should not embolden parties to ignore the mandates of Article 39.14(b).

*v. State*, 346 S.W.3d 113, 122 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (quoting *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd)).

After reviewing the record, we hold Dr. Kellogg's testimony was, in essence, a reiteration of the testimony provided by Cynthia Ann Garcia, the Childsafe Sexual Assault Nurse Examiner who examined A.V. In fact, at oral argument, H.T.S.'s counsel conceded that the evidence provided by Dr. Kellogg and Nurse Garcia was essentially the same. Counsel's concern was not that Dr. Kellogg provided new and different testimony, but that the same testimony coming from a doctor gave more credence to the nurse's testimony and provided a cumulative effect. Accordingly, because the evidence provided by Dr. Kellogg was also given, without objection, by another witness, we hold any error in allowing Dr. Kellogg to testify was harmless and would not entitle H.T.S. to a reversal.

### *Hearsay Evidence*

In his second point of error, H.T.S. contends the trial court erred in admitting "inadmissible hearsay evidence by two of three State's witnesses over the objection of . . . trial counsel." The State counters by arguing the testimony in question fell within excited utterance and present sense impression exceptions to the hearsay rule.

### *Standard of Review*

In determining whether a trial court erred in admitting or excluding evidence under an exception to the hearsay rule, the reviewing court "looks to see whether the trial court clearly abused its discretion." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *McNair v. State*, 75 S.W.3d 69, 71 (Tex. App.—San Antonio 2002, no pet.). To find error, the reviewing court must determine the trial court's ruling was "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor*, 268 S.W.3d at 579.

Even if the trial court errs and admits hearsay statements, such error is nonconstitutional error and is not grounds for reversal unless the error affects the defendant's substantial rights. *Lacaze*, 346 S.W.3d at 122; TEX. R. APP. P. 44.2(b). If, after examining the record as a whole, the reviewing court is reasonably assured the error did not influence the verdict or had but a slight effect, the error did not affect the defendant's substantial rights. *Lacaze*, 346 S.W.3d at 122. The improper admission of evidence does not affect a defendant's substantial rights if the same or similar evidence is admitted without objection at another point in the trial. *Id.*

### Application

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). "Hearsay is not admissible except as provided by statute or [the Rules of Evidence] or by other rules prescribed pursuant to statutory authority." *Id.* (quoting TEX. R. EVID. 802). In other words, hearsay statements are inadmissible at trial unless an applicable exception applies. *See id.* The general rule against the admission of hearsay statement is based on their inherent unreliability. *Fischer v. State*, 207 S.W.3d 846, 852 (Tex. App.—Houston [14th Dist.] 2006, *aff'd*, 252 S.W.3d 375 (Tex. Crim. App. 2008)).

Once the party opposing the admission of the hearsay evidence properly objects, the burden shifts to the proponent of the evidence to establish an exception applies that would make the evidence admissible despite its hearsay character. *Taylor*, 268 S.W.3d at 578–79.

An excited utterance is an exception to the hearsay rule, and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2); *see Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). To qualify as an excited utterance, the statement must be a product of a startling occurrence; the declarant must have been dominated by the emotion,

excitement, fear, or pain of the occurrence; and the statement must be related to the circumstances of the startling occurrence. *Couchman v. State*, 3 S.W.3d 155, 159 (Tex. App.—Fort Worth 1999, pet. ref'd) (citing *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). In determining whether a hearsay statement is admissible under the excited utterance exception, the reviewing court may look at: (1) the time that elapsed between the event and the statement, and (2) whether the statement was in response to a question. *Campos v. State*, 186 S.W.3d 93, 98–99 (Tex. App.—Houston [1st Dist.] 2005, no pet.). However, neither of these factors is dispositive; rather, "[t]he critical factor . . . is whether the declarant was still dominated by the emotions, fear, excitement, or pain of the event at the time of the statement." *Id.* at 99 (citing *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003)).

Another exception to the inadmissibility of hearsay statements is a present sense impression, which is defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." TEX. R. EVID. 803(1). Part of the rationale for allowing the admission of present sense impressions is that such a report "is safe from any error from defect of memory of the declarant," and "there is little or no time for calculated misstatement." *Rabbani v. State*, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992). In *Russo v. State*, the Third Court of Appeals stated that three principal requirements must be met before evidence is admissible under the present sense impression exception: (1) the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration must be contemporaneous with the events. 228 S.W.3d 779, 808 (Tex. App.—Austin 2007, pet. ref'd) (citing *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998); *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001)).

Here, H.T.S. first complains about the admission of portions of the testimony of Officer George Chavez. He specifically complains about Officer Chavez's testimony about what A.V. told him, as well as his testimony about A.V.'s demeanor and that of her mother. With regard to the officer's testimony about A.V.'s and B.V.'s demeanor, we hold that testimony is not hearsay. Officer Chavez's statements about the demeanor of the victim and her mother were based on his personal observations, not on what he was told by the victim and her mother.[2] *See Josey v. State*, 97 S.W.3d 687, 698 (Tex. App.—Texarkana 2003, no pet.) (stating that because officer's testimony included more than his observations of victim's demeanor, testimony was hearsay). Thus, we hold the trial court did not err in admitting this observational testimony.

As for the officer's testimony about what A.V. told him, Officer Chavez stated[3]:

> After speaking with [A.V.], I learned that while being coached in swim practice by what they refer to as a senior, which was an older group of juveniles in the pool, this other juvenile who was coaching her identified as [H.T.S.] on four approximate separate occasions came into contact with her genital area in what she described as a pinching manner. When asked how long each contact was for, she said that it lasted for several seconds.

*     *     *

The first person that [A.V.] told was her mother.

The State does not dispute H.T.S.'s contention that the officer's testimony about what A.V. told him is hearsay. However, the State contends the statements fell within the hearsay exceptions of were excited utterances or present sense impressions. We agree the statements were excited utterances.

---

[2] Officer Chavez stated A.V. and her mother appeared to be in shock, but A.V. was well-spoken, explained in detail what happened, and answered his questions "quickly," "accurately," and "descriptively."

[3] In his brief, H.T.S refers to the hearsay statements about which he complains as appearing Volume 5, pages 18-19 of the reporter's record. Upon review, the statements quoted are the only statements appearing on those pages in which Officer Chavez testifies regarding what A.V. told him.

Officer Chavez testified he spoke to A.V. shortly after the incident in the pool, having arrived soon after it occurred–perhaps as soon as five minutes, but no longer than twenty minutes. He also testified A.V. was "[s]omewhat shocked," but not afraid. The statements made to Officer Chavez by A.V. clearly were a product of the "startling occurrence" when H.T.S. touched and pinched A.V. in her genital region. Her statements related directly to the "startling occurrence," and although they were in direct response to the officer's questions, the statements were made by a young child, soon after the event, and obviously at a time when A.V. was still experiencing the emotions, fear, and pain caused by the event. Given her age, the event, and the short passage of time, we hold it was not outside the zone of reasonable disagreement for the trial court to conclude A.V.'s statements were based on impulse as opposed to reason and reflection. *See Zuliani*, 97 S.W.3d at 596; *Gonzalez v. State*, 155 S.W.3d 603, 606 (Tex. App.—San Antonio 2004, *aff'd*, 195 S.W.3d 114 (Tex. Crim. App. 2006)). Therefore, we hold the trial court did not abuse its discretion in concluding A.V.'s statements were excited utterances, and Officer Chavez's testimony regarding those statements was admissible.

This holding is consistent with numerous cases that hold a victim's statements to an officer, describing what happened shortly after the event, are excited utterances, and the officer is not precluded by the hearsay rule from repeating those statements in court. *See, e.g., Gonzalez*, 155 S.W.3d at 606; *Tyler v. State*, 167 S.W.3d 550, 555 (Tex. App.—Houston [14th Dist.] 2005, pets. ref'd); *Mumphrey v. State*, 155 S.W.3d 651, 658–59 (Tex. App.—Texarkana 2005, pet. ref'd); *Reyes v. State*, 48 S.W.3d 917, 920 (Tex. App.—Fort Worth 2001, no pet.).

However, even if we were to conclude A.V.'s statements were not excited utterances, we hold the admission of Officer Chavez's testimony is not reversible error, i.e., it did not affect H.T.S.'s substantial rights. *See Lacaze*, 346 S.W.3d at 122; TEX. R. APP. P. 44.2(b). A review of the entire record establishes A.V. provided a much more detailed account of the incident in the

pool–expounding on the statement she gave to Officer Chavez. Specifically, she stated H.T.S. put his hand on the outside and inside of her swim shorts, touching her privates, pinched her privates, and inserted his finger into her privates. She demonstrated H.T.S's actions on an anatomically correct doll. In addition: (1) A.V.'s mother testified that A.V. told her H.T.S. pinched her privates; (2) Courtney Weese, the recreation coordinator for the City of Live Oak, testified that A.V. said a boy pinched her and A.V. put her hands into her own shorts to demonstrate what the boy had done; and (3) Cynthia Garcia, the nurse who examined A.V., testified A.V. told her H.T.S. put his hand in her swimsuit, and grabbed and squeezed her privates. This testimony was admitted without a hearsay objection.

As noted above, the improper admission of evidence does not affect a defendant's substantial rights and cannot be grounds for reversal, if the same or similar evidence is admitted without objection at another point during the trial. *Lacaze*, 346 S.W.3d at 122. There was a surfeit of evidence admitted that was similar to that provided by Officer Chavez. A detailed version of the evidence was provided by the victim herself. Therefore, we hold that even if the trial court erred in admitting the evidence, H.T.S. is not entitled to a reversal. *See id.* Based on the foregoing, we need not address the State's alternate argument that Officer Chavez's testimony was admissible based on the present sense impression exception to the hearsay rule.

H.T.S. also complains the trial court erred in permitting Crystal Smith, the head coach of the Live Oak swim team, to testify to "A.V.'s non-verbal assertive testimony," arguing it was hearsay. Specifically, H.T.S. is referring to an exchange that occurred when Smith was asked by the prosecutor whether A.V. had demonstrated what had happened to her. H.T.S. objected, stating that if Smith gave more than a "yes or no" answer, the response would be hearsay. After the objection, the prosecutor repeated the question, and Smith testified that A.V. had demonstrated what had been done to her. The prosecutor then asked, "When you were watching

her, what did [A.V.] do?" H.T.S. objected again on grounds of hearsay, arguing the State was asking for non-verbal assertive testimony. Although the trial court overruled the objection, Smith did not describe what A.V. allegedly did; rather, Smith testified about specific questions she asked A.V. At this point, H.T.S. lodged a confrontation clause objection, but said nothing about hearsay. Thus, it does not appear Smith provided any "non-verbal assertive testimony," i.e., she did not demonstrate or testify about what A.V. showed her with regard to what happened. Accordingly, there was no objectionable testimony from Smith.

Moreover, as with Officer Chavez's testimony, even if Smith provided the objectionable evidence complained of by H.T.S., there was an abundance of similar evidence admitted through other witnesses at other points during the trial. A.V. provided detailed testimony about what H.T.S. did to her, and her mother, Ms. Weese, and Nurse Garcia provided similar evidence based on what A.V. told them. Accordingly, the admission of Smith's non-verbal assertive testimony does not entitle H.T.S. to a reversal. *See id.*

Based on our analysis and the applicable standards of review, we overrule the second point of error.

### *Sufficiency of the Evidence*

In his final point of error, H.T.S. contends the evidence is legally and factually insufficient. Specifically, H.T.S. contends the evidence was insufficient to establish he touched A.V. with the intent to arouse or gratify the sexual desire of any person.

### *Standard of Review*

Although juvenile appeals are categorized as civil cases, they are "quasi-criminal" in nature, and a reviewing court uses the same standards applicable in criminal appeals when reviewing challenges to the sufficiency of the evidence to support a finding that a juvenile engaged in delinquent conduct. *In re D.R.T.*, 339 S.W.3d 208, 209 (Tex. App.—El Paso 2011,

no pet.); *In re T.K.E.*, 5 S.W.3d 782, 785 (Tex. App.—San Antonio 1999, no pet.). Prior to the decision of the Texas Court of Criminal Appeals in *Brooks v. State*, sufficiency challenges could include challenges to the legal and/or factual sufficiency of the evidence. 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). However, in *Brooks*, the court held there was but one sufficiency standard in criminal cases, the legal sufficiency standard of *Jackson v. Virginia*. *Id.*; *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

Because the Texas Court of Criminal Appeals has abolished factual sufficiency review, *see Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011) (citing *Brooks*, 323 S.W.3d at 894–95 (Tex. Crim. App. 2010)), legal sufficiency standard established in *Jackson v. Virginia* is the only standard a reviewing court uses in determining whether the evidence is sufficient to support each element of the charged offense. *Brooks*, 323 S.W.3d at 895 (citing *Jackson*, 443 U.S. at 318–19). Accordingly, we will review H.T.S.'s issue as a challenge to the legal sufficiency of the evidence.

In reviewing a claim that the evidence is legally insufficient, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. This standard accounts for the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Accordingly, in analyzing legal sufficiency, we will determine whether the necessary inferences are reasonable based on the combined force of the evidence, direct and circumstantial, when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

*Application*

The jury determined H.T.S. committed delinquent conduct by committing the offense of indecency with a child by contact. *See* TEX. PENAL CODE ANN. § 21.11 (West 2011). Section 21.11 of the Texas Penal Code provides that a person commits the offense of indecency with a child when one engages in "sexual contact" with a child younger than seventeen years of age, whether the child is of the same or opposite sex. *Id.* "Sexual contact" is defined under the Code as "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," if committed with the intent to "arouse or gratify the sexual desire" of the person. *Id.* § 21.11(c)(1).

H.T.S. is correct in his assertion that there is no direct evidence that he acted with intent to arouse or gratify his sexual desire. However, rarely will there be direct evidence of what the accused intended at the time of sexual contact. *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Thus, the trier of fact must generally infer intent from circumstantial evidence. *Id.* Accordingly, courts have held that in in the context of indecency with a child, the intent component of the offense can be inferred from the defendant's conduct, his remarks, and all surrounding circumstances. *See, e.g., Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd); *Scott*, 202 S.W.3d at 408. Importantly, intent to arouse or gratify sexual desire can be inferred from the defendant's conduct alone, no oral expression of intent or visible evidence of sexual arousal is necessary. *Scott*, 202 S.W.3d at 408. Moreover, the testimony of a child victim alone is sufficient to support a conviction for indecency with a child. *Id.*

Here, the State presented evidence from A.V., the child victim. As noted above, A.V. testified that while she was swimming, H.T.S. put his hand under her shorts and touched and "pinched" her "privates." A.V. showed the jury on an anatomically correct doll that her

"privates" referred to her female sexual organ, i.e., vagina. A.V. testified H.T.S. touched her "privates" several times, outside her shorts and inside her shorts. At some point, H.T.S. kept his hand on her "privates" and eventually placed his finger inside her "privates." A.V. stated it was uncomfortable and hurt so she began to kick to make H.T.S. stop. A.V. said she did not yell for help because she was afraid H.T.S. might hurt her or her mother.

From A.V.'s testimony about H.T.S. touching and pinching her, the jury could have inferred H.T.S. did so with the intent to around or gratify his sexual desire. *See Bazanes*, 310 S.W.3d at 40 (holding jury could infer intent to arouse or gratify from child's testimony that defendant tried to kiss her, put his hand under her underwear and touched her genitals, touched her breast, and placed her hand on his penis); *Scott*, 202 S.W.3d at 408–09 (holding jury could have found intent to arouse or gratify sexual desire from child's testimony that defendant touched her privates unrelated to application of medication and applied medication when she was old enough to apply it herself); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd) (holding jury could infer from defendant's touching of child's genitals that it was done with intent to arouse or gratify defendant's sexual desire); *Gottlich v. State*, 822 S.W.2d 734, 742 (Tex. App.—Fort Worth 1992, pet. ref'd) (holding there was sufficient evidence of intent to arouse or gratify sexual desire when defendant placed his hand inside victim's panties and played with her "private"), *abrogated on other grounds by Arevalo v. State*, 943 S.W.2d 887, 888–90 (Tex. Crim. App. 1997).

H.T.S.'s intent could also be inferred from his statement to police in which H.T.S. admitted that he pinched H.T.S. on her genitals to prevent her from sinking, but that it was an accident. H.T.S. stated, "and when she sinked [sic] to the bottom of the pool, I grabbed - - I squeezed her vagina and brought her to the top of the pool." Prior to this, H.T.S. had denied touching A.V. in an inappropriate manner. H.T.S. did not claim the touching was an accident

until his father mentioned it. These statements, when considered against A.V.'s testimony, would permit the jury to infer intent. *See, e.g., Couchman*, 3 S.W.3d at 163 (holding defendant's statements that he touched child's genitals on two occasions for "hygienic" purposes did not establish he lacked intent; rather, because statements conflicted with victim's testimony, jury could resolve conflict and conclude defendant acted with intent to arouse or gratify).

Viewing all of the evidence in the light most favorable to the prosecution and deferring, as we must, to the jury's determination and evaluation of the witnesses' credibility, we hold there was legally sufficient evidence from which the jury could have found H.T.S. acted with intent to arouse or gratify his sexual desire when he touched A.V.'s genitals. Accordingly, given this was the only element of the offense challenged by H.T.S., we hold the judgment finding H.T.S. engaged in delinquent conduct by committing the offense of indecency with a child was supported by legally sufficient evidence and overrule his complaint.

## CONCLUSION

Based on the foregoing, we overrule H.T.S.'s points of error and affirm the trial court's judgment.

Marialyn Barnard, Justice