**Affirmed and Memorandum Opinion filed February 21, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-01019-CR

**GREGORY LONGORIA, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1295949**

## MEMORANDUM OPINION

A jury convicted appellant Gregory Longoria, Jr. of aggravated assault of a family member and assessed punishment at 30 years' confinement. We affirm.

### BACKGROUND

The appellant and the complainant dated for several years. On February 16, 2011, the complainant spent the night at the appellant's apartment. The appellant

hit the complainant with a belt and used a cigarette lighter to inflict burns on the complainant's breasts and vagina during the night. The complainant went to the emergency room at Kingwood Medical Center on the morning of February 17, 2011 and was treated for her injuries; these included second-degree burns on her vagina. At 10:00 p.m., she was transferred to the burn unit at the University of Texas Medical Center in Galveston. She was discharged from the burn unit on February 18.

The complainant initially told a friend and medical personnel that she was afraid of appellant; according to the hospital admission papers, the complainant stated that her reason for being there was "assault" by her baby's father.[1] She told Nidia Cantu, a social worker at the Harris County District Attorney's office, that the appellant had threatened to harm or kill the complainant or her parents if she told police about the assault.

The appellant was arrested on February 17, 2011, and indicted for "Aggravated Assault- Family Member" for "unlawfully intentionally and knowingly caus[ing] serious[2] bodily injury to [the complainant], a member of [the appellant's] family as hereinafter styled the Complainant, by BURNING THE COMPLAINANT'S VAGINA with a deadly weapon, namely, FIRE." On March

---

[1] The appellant and the complainant had a daughter together; she was about 18-months old at the time of the assault.

[2] The word "serious" was included in the original complaint but was marked out by hand on the indictment. Both the State and the appellant made statements in the trial court indicating that the appellant was charged under section 22.02(b)(1) of the Texas Penal Code, and the judgment recites the crime as "[A]GGRAVATED ASSAULT – FAMILY MEMBER SB."

Given the interlineations on the indictment, our analysis is based on the conclusion that the appellant was indicted and tried under section 22.02(a)(2) of the Texas Penal Code, which does not require a finding of serious bodily injury.

19, the complainant and the appellant began writing letters to each other. Shortly thereafter, the complainant began describing the episode as consensual.

Several photographs of the complainant's injuries were admitted into evidence at trial. State's exhibits 1 and 2 show bruises and abrasions on the complainant's neck, left arm, and left side of her torso. State's exhibits 8 and 37 show bruises and abrasions on the complainant's left thigh, and State's exhibit 9 shows bruises on both of the complainant's knees. State's exhibits 3 and 4 show burns and skin discoloration on the complainant's breasts and nipples. State's exhibits 33, 34, 35, and 36 are close-up photographs of the injuries to the complainant's breasts and left nipple — witnesses described it as "melted." State's exhibits 5, 6, 7, 38, 39, 40, 41, and 42 show burn injuries to the complainant's vagina.

Harris County Sherriff's Deputy Aneshia Keller testified that she was called to the Kingwood Medical Center for a "sexual assault scene, family violence." Keller observed that the complainant's "private areas had been burned and were melted" and testified on direct examination that the complainant's vagina appeared to be severely burned. After interviewing the complainant and observing her injuries, Keller determined that "[s]he had been tortured."

Keller testified on cross-examination about her initial report, which she reviewed with the complainant. Keller testified that the complainant had been reluctant to accompany the appellant to his apartment on February 16, 2011, but she did so because she was afraid the appellant "was going to hurt her parents" if she refused.

3

Cross-examination continued:

Q. (Defense counsel) And then he took a lighter and hair spray to left nipple.
A. (Keller) Yes.
Q. And began to burn until it melted.
A. Yes.

        *               *               *

Q. And then burned the vaginal area, correct?
A. Yes.
Q. And [the complainant] begged him to stop?
A. Uh-huh.
Q. Is that correct?
A. Yes.
Q. And he hit her in the right jaw, leaving a bruise?
A. Uh-huh.
Q. Correct?
A. Yes.

        *               *               *

Q. And then he, according to — when he beat her, she told you that he beat her with a metal belt buckle all over her chest. All over her chest, her back, her arms and legs? Remember that?
A. Right here. Got it.
Q. Okay. And then she's screaming through all this, right?
A. Yep. That's what it says right here.
Q. And the pain was great?
A. The pain was great.
Q. And then after he did all of this is when he put a rag in her mouth, correct?
A. Yes.
Q. And once the rag was in his (sic) mouth, then he burned her inside of her vagina again?
A. Okay.
Q. Am I correct?
A. You're correct.
Q. And he slapped her face.
A. Yes.
Q. And then he put a belt around her neck.
A. Okay.

4

Q. Is that correct?
A. That's correct.
Q. And pulled that belt around her neck so tight that he almost passed out — she almost passed out.
A. Yes.

Keller testified that the appellant then put a pillow over the complainant's face until she passed out; at some point, the appellant told the complainant he "wanted her to feel the pain that he felt" when she left him.

The complainant called her friend Leticia Hernandez shortly after the assault. Hernandez testified that the complainant was crying as she told Hernandez that the appellant had burned her breasts and vagina. The complainant told Hernandez that the appellant tied her hands and feet and put a pillow over her face before he hit her with a belt and burned her with a lighter and hairspray; she said "she couldn't breathe and she was asking God for him to let her go." The complainant also told Hernandez that it hurt when she went to the bathroom. After this conversation, the complainant drove to Hernandez's house; Hernandez testified that when she arrived, the complainant was walking unusually with her legs wide apart and her arms away from her body. The complainant's mother also testified that the complainant was walking unusually, "with her legs open."

Tami Gustafson is a registered nurse and was working in the emergency room at Kingwood Medical Center when the complainant arrived on February 17, 2011. Gustafson testified that the complainant told her the appellant tied her to a bed and stuffed a rag in her mouth before burning her breasts and vagina with a lighter and beating her with a belt. Gustafson testified that the complainant's injuries were consistent with the complainant's statements and that, if left untreated, burns like the complainant's could lead to an infection she "would be concerned about."

5

Dr. Uribe-Torres is a physician who specializes in obstetrics and gynecology and who was on-call at Kingwood Medical Center when the complainant arrived. At trial, she testified:

> [The complainant] said that her ex-boyfriend tied her up to a bed from 12:00 AM to 4:00 AM and he inflicted multiple burns with a cigarette lighter and also used hair spray, burned her in her nipple, both nipples and genital area and whipped her with a belt on the buckle side of the belt.

Dr. Uribe-Torres determined that the complainant's injuries were consistent with that statement.

The complainant testified at trial that she voluntarily accompanied the appellant to his apartment on February 16, 2011 with the intention of engaging in sexual intercourse with him. She told the jury that she and the appellant regularly engaged in "rough sex," and that the hitting and burning that occurred while she was at the appellant's apartment was consensual. The complainant testified that she consented to having her feet tied to the bedposts with extension cords and her hands tied together with a cloth band. She further testified that the appellant (1) hit her three times with a belt and then stopped hitting her after she asked him to do so; and (2) applied the open flame from a cigarette lighter to her vagina and then removed the flame when the heat became too intense and she asked him to stop. The appellant contends on appeal that the burning occurred as part of consensual sexual "fireplay."

The jury charge contained an instruction on the issue of consent. The instruction erroneously placed the burden of proof with respect to consent on the appellant.

6

The jury returned a guilty verdict on the offense of aggravated assault and sentenced the appellant to 30 years' confinement. This appeal followed.

The appellant raises five issues on appeal: (1) The trial court committed fundamental error by misplacing the burden of proof on the consent issue; (2) the trial court erred in admitting into evidence hearsay testimony from complainant's friend, Leticia Hernandez; (3) the trial court erred in admitting into evidence hearsay testimony from the complainant's treating physician, Dr. Brenda Uribe-Torres; (4) the trial court erred in admitting into evidence hearsay evidence within hospital admission records; and (5) insufficient evidence supports findings that fire was a deadly weapon as used in this case, and that the complainant did not consent.

## ANALYSIS

### I.      Sufficiency of the Evidence

We must address sufficiency challenges regardless of our disposition of the other issues in a case. *See Graham v. State*, 643 S.W.2d 920, 924 (Tex. Crim. App. 1981); *Banks v. State*, 158 S.W.3d 649, 650 n.1 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). This is because a successful challenge to the sufficiency of the evidence bars retrial and requires the entry of a judgment of acquittal. *Graham*, 643 S.W.2d at 924; *Banks*, 158 S.W.3d at 650 n.1. Accordingly, we begin by discussing appellant's fifth issue.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *see also Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App.

7

2010). The jury is the exclusive judge of the credibility of witnesses and the weight of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Thus, we defer to the jury's responsibility to fairly resolve conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Id.*

To obtain a conviction for aggravated assault, the State must prove beyond a reasonable doubt that the accused intentionally, knowingly, or recklessly caused bodily injury to another while using or exhibiting a deadly weapon.[3] *See* Tex. Penal Code Ann. § 22.01(1)(1) (Vernon 2011) (Assault); Tex. Penal Code Ann. § 22.02(a)(2) (Vernon 2011) (Aggravated Assault). A deadly weapon is "anything that in manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon 2011). Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46) (Vernon 2011).

Fire is capable of causing death or serious bodily injury, so it can be a deadly weapon under the statutory definition. *Mims v. State*, 335 S.W.3d 247, 250 (Tex. App.—Houston [1st Dist.] 2010, pet. filed). Whether fire is a deadly weapon in a particular case depends on the facts. *See id.*

---

[3] When aggravated assault is prosecuted as a first-degree felony offense against a family member, the State must prove that the accused actually (1) used a deadly weapon and (2) caused serious bodily injury. Tex. Penal Code Ann. § 22.02(b)(1) (Vernon 2011). When aggravated assault is prosecuted as a second-degree felony, the State need not prove actual use of the deadly weapon or actual serious bodily injury. *See* Tex. Penal Code Ann. § 22.02(b) (Vernon 2011).

The jury charge instructed as follows.

> A person commits the offense of assault if the person intentionally or knowingly causes bodily injury to another, including the person's spouse.
>
> A person commits the offense of aggravated assault if the person commits assault, as hereinbefore defined, and the person uses or exhibits a deadly weapon during the commission of the assault.
>
> *          *          *
>
> "Deadly weapon" means anything that in the manner of its use or intended use is capable of or [sic] serious bodily injury.
>
> "Bodily injury" means physical pain, illness, or any impairment of physical condition.
>
> *          *          *
>
> Now, if you find from the evidence beyond a reasonable doubt that on or about the 17th day of February, 2011, in Harris County, Texas, [the appellant] did then and there unlawfully, intentionally or knowingly cause bodily injury to [the complainant], a member of [the appellant's] family, by burning [the complainant's] vagina with a deadly weapon, namely, fire, then you will find [the appellant] guilty of aggravated assault of a family member, as charged in the indictment.
>
> *          *          *
>
> It is a defense to prosecution that [the complainant] effectively consented to [the appellant's] conduct if the conduct did not threaten or inflict serious bodily injury.
>
> "Consent" means assent in fact, whether expressed or apparent.

The charge additionally defines "serious bodily injury" as "a bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

The appellant identifies his fifth issue on appeal as follows: "Whether the evidence was sufficient to show that fire as used in this case was a deadly weapon or that the complainant did not consent." In connection with this issue, the appellant argues that "[t]he complainant's injuries did not meet the definition of 'serious bodily injury'" under section 1.07(a)(46) because the evidence shows that these injuries "healed without scarring and there was no prolonged loss." The appellant further argues that, "while fire **can** be a deadly weapon, there is nothing but speculation that it was under the facts of this case."

According to the appellant, fire "is a deadly weapon if it causes serious bodily injury or death. Conversely, it should not be a deadly weapon based on the manner of its use or intended use in the absence of a serious bodily injury." He concedes that the complainant's injuries meet the statutory definition of "bodily injury"[4] but argues that those injuries do not rise to the level of "serious bodily injury"[5] because

> [t]he complainant was not required to undergo surgery. She was given pain medication — some of which she did not use — and given antibiotics. There is no evidence that the injury, even if untreated, would have led to death, substantial risk of death, serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

The appellant further contends that "[t]here is no evidence that fire as used in this case was capable of causing serious bodily injury or death." We reject the appellant's contentions. In the context of a deadly weapon finding, the State is not required to establish that the use or intended use caused death or serious bodily injury; the State must establish that the use or intended use is **capable** of causing

---

[4] Tex. Penal Code Ann. § 1.07(a)(8).

[5] Tex. Penal Code Ann. § 1.07(a)(46).

death or serious bodily injury.  *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008).  The jury charge instructed the jury in conformity with this precept.

The jury saw at least 19 photographs of the complainant's injuries, which depict blackened flesh on the complainant's vagina.  Deputy Keller observed that the complainant's "private areas had all been burned and were melted" and determined that the complainant "had been tortured."  Dr. Uribe-Torres and nurse Gustafson both testified regarding the threat of infection.  Dr. Uribe-Torres described the complainant's injuries in detail to the jury.

- The complainant's pelvic area "show[ed] signs of burning, swelling, redness, charring, blistering, denuding[6] of the skin."

- The complainant suffered second-degree burns and showed "obvious swelling."

- One burn on the complainant's vagina emitted a "yellowish secretion."

- The complainant was given morphine intravenously for her pain; morphine is used in cases where "there's a severe degree of pain."

- The high bacterial count in the genital area put the complainant at risk of an infection that could spread to other areas of her body.

- The complainant's burns were too severe to be properly cared for in the emergency room, and the complainant was transferred to a specialized burn unit.

---

[6] Asked for clarification by the State, Dr. Uribe-Torres responded, "Denuding of the skin.  Skin peeling off."

11

The determination of whether an object alleged to be a deadly weapon is capable of causing "serious bodily injury" rests with the jury. *See Miller v. State*, 312 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The evidence is sufficient if, based on the evidence itself and any reasonable inferences from it, a rational fact finder could have found beyond a reasonable doubt that the object as used in the case was capable of creating a substantial risk of death or causing death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *See* Tex. Penal Code Ann. § 1.07(a)(17), (46); *Gear*, 340 S.W.3d at 746; *see also Brooks*, 323 S.W.3d at 895.

We hold that the photographs and the testimony provided sufficient evidence to establish that fire as used in this case was a deadly weapon for purposes of section 1.07(a)(17)(B). The evidence also is sufficient to establish that consent is not an available defense to the prosecution because the use of fire at issue threatened or inflicted serious bodily injury.

We overrule the appellant's fifth issue.

## II.  Charge Error on Consent

In his first issue, the appellant argues that he was egregiously harmed by an error in the jury charge and that the jury charge constitutes structural error that is not subject to harmless-error analysis. The State concedes that the jury charge contained an erroneous charge with respect to consent but insists that the error was harmless.

We review claims of charge error under a two-pronged test. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Rolle v. State*, 367 S.W.3d 746, 757 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim.

12

App. 2005); *Rolle*, 367 S.W.3d at 757. If error exists, we then evaluate the harm caused by that error. *Ngo*, 175 S.W.3d at 743; *Rolle*, 367 S.W.3d at 757. The degree of harm required for reversal depends on whether the error was preserved in the trial court. When error is preserved in the trial court by timely objection, the record must show only "some harm." *Rolle*, 367 S.W.3d at 757. If the error was not objected to, then it must be "fundamental error" and requires reversal only if it was so egregious and created such harm that the defendant has not had a fair and impartial trial. *Id.*

> The jury instruction at issue reads:
>
> It is a defense to prosecution that the victim effectively consented to the defendant's conduct if the conduct did not threaten or inflict serious bodily injury.
>
> "Consent" means assent in fact, whether expressed or apparent.
>
> "Serious bodily injury" means a bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.
>
> Therefore, if you find from the evidence beyond a reasonable doubt that [complainant] effectively consented to the [appellant's] conduct, to-wit: burning her vagina with fire, and that the conduct did not threaten or inflict serious bodily injury, then you will acquit the [appellant] and say by your verdict "Not Guilty."

The appellant contends that this portion of the charge is erroneous because it improperly placed the burden of proof on him. The appellant takes no issue with the remainder of the jury charge, which instructs the jury that a deadly weapon is anything "capable of causing death or serious bodily injury" and that:

13

[I]f you find from the evidence beyond a reasonable doubt that on or about the 17th day of February, 2011, in Harris County, Texas, [the appellant] did then and there unlawfully, intentionally or knowingly cause bodily injury to [the complainant], a member of [the appellant's] family, by burning [the complainant's] vagina with a deadly weapon, namely, fire, then you will find [the appellant] guilty of aggravated assault of a family member, as charged in the indictment.

The appellant has not challenged the presumption on appeal that the jury understood and followed this part of the trial court's jury charge. *See Hutch v. State*, 922 S.W.2d 168, 172 (Tex. Crim. App. 1996).

The appellant did not object to the misstatement of the burden of proof below. Therefore, we apply the egregious harm standard. *See Rolle*, 367 S.W.3d at 757. The appellant contends he was egregiously harmed because consent was the only contested issue at trial.

We conclude that the appellant was not egregiously harmed because the defense of consent was unavailable to him. *See* Tex. Penal Code Ann. § 22.06(a)(1); *Miller*, 312 S.W.3d at 213.

Because the jury found the appellant guilty of aggravated assault, it necessarily found that, as used by the appellant, fire was "capable of causing death or serious bodily injury." *See id.*; *see also Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("By its verdict, the jury necessarily made the factual finding to support the entry of an affirmative finding of the use or exhibition of a deadly weapon upon the judgment."). As discussed above, the evidence is sufficient to support a finding that fire as used in this case was capable of causing serious bodily injury.

14

Consent is not an available defense for a defendant whose conduct threatens or inflicts serious bodily injury. *See* Tex. Penal Code Ann. § 22.06(a)(1); *Miller*, 312 S.W.3d at 213. Accordingly, this defense was not available to the appellant. Because the appellant was not entitled to an instruction on consent, any error in placing the burden of proof in a consent instruction to which the appellant was not entitled falls short of establishing egregious harm. *See Rolle*, 367 S.W.3d at 757 (Egregious harm is "such harm that the defendant has not had a fair and impartial trial.").

Likewise, we must consider the trial record as a whole. *Allen v. State*, 253 S.W.3d 260, 267-68 (Tex. Crim. App. 2008); *Almanza*, 686 S.W.2d at 171. In doing so, we note that (1) elsewhere in the charge, the jury was told, "The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant;" (2) the State argued in its closing argument that the appellant's conduct exceeded the scope of the complainant's consent and threatened serious bodily injury, which cannot be consented to; and (3) the defense argued without objection during its closing that, "The State of Texas bears the burden to you to not throw anything at the wall and see what sticks but to prove to each and every one of you beyond a reasonable doubt that that isn't exactly what happened, that [the complainant] didn't consent to every single thing that went on that night." The record must demonstrate that the appellant has suffered *actual*, not just theoretical, harm from the erroneous jury instruction. *Allen*, 253 S.W.3d at 268; *Almanza*, 686 S.W.2d at 171. Because the reasonable doubt standard was properly stated elsewhere in the charge and in defense counsel's final argument and because the State argued the appellant's

conduct exceeded the scope of any consent, we do not believe that the appellant has suffered any actual egregious harm.

A charge error is structural error immune from harm analysis only when it completely misdefines or fails to instruct on the reasonable doubt standard. *See Olivas v. State*, 202 S.W.3d 137, 142-43 (Tex. Crim. App. 2006) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993)). The charge error at issue here is not structural error because the consent instruction was the only portion of the charge to misdefine the reasonable doubt standard. *See id.* at 143. The rest of the charge properly defined the standard and placed the burden on the State.

We overrule the appellant's first issue.

## III. Hearsay

In his second, third, and fourth issues, the appellant argues that the trial court erred by admitting inadmissible hearsay into evidence over his objections. The State responds with three arguments: (1) The appellant's trial objection was too vague to preserve any hearsay issue for review; (2) the statements at issue were admissible exceptions to the hearsay rule as excited utterances or statements made for purposes of medical treatment; and (3) the admission of the statements did not harm the appellant. We resolve this issue based upon the third proposition.

Excited utterances and statements made for purposes of medical diagnosis or treatment are allowed as exceptions to the general hearsay rule. Tex. R. Evid. 803(2), (4). Whether an out-of-court statement fits within one of these exceptions is a matter within the trial court's discretion. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994); *Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.— Houston [14th Dist.] 2007, no pet.). As a reviewing court, our role is limited to

determining whether the record supports the trial court's ruling. *Coffin*, 885 S.W.2d at 149; *Trevino*, 218 S.W.3d at 239.

If we determine that the trial court erred by admitting hearsay testimony, we apply the harm analysis for non-constitutional error to determine whether the trial court's error is reversible. Tex. R. App. P. 44.2(b); *Lacaze v. State*, 346 S.W.3d 113, 122 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Such error does not affect a substantial right — and therefore is not reversible error — if, after examining the record as a whole, we are reasonably assured that the error did not influence the verdict or had but a slight effect. *Lacaze*, 346 S.W.3d at 122. The improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Id.*; *see Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

We need not address preservation or admissibility because we conclude that the appellant was not harmed by admission of the challenged evidence.

In his second issue, the appellant contends that the court erred in admitting Hernandez's testimony that the complainant told her the appellant used a bottle of flammable hairspray to augment the lighter's flame so that "it would burn more." Based on our analysis above of sufficiency of the evidence, any asserted error in admitting this testimony is harmless. The State offered sufficient evidence to prove that, as used by the appellant, fire was capable of causing serious bodily injury to the complainant. *See* Tex. Penal Code Ann. § 22.02(b)(1) (Vernon 2011). This determination rests on evidence concerning the effect of the fire that was applied to the complainant; it does not depend on whether the flame that was applied to the complainant emanated solely from the lighter itself or emanated from the lighter and was then enhanced using an aerosol accelerant. Because the

State proffered sufficient evidence to establish that, as used in this case, fire was capable of causing serious bodily injury, we hold that hearsay testimony regarding hairspray was not harmful.

In his third and fourth issue, the appellant contends that the trial court erred in admitting testimony from Dr. Uribe-Torres and hospital admission records. According to the appellant, the trial court should not have admitted hearsay indicating that the appellant committed the assault that resulted in the complainant's injuries. Dr. Uribe-Torres testified that the complainant told her that she was at the hospital because "her ex-boyfriend tied her up to a bed from 12:00 AM to 4:00 AM and he inflicted multiple burns with a cigarette lighter and also used hair spray, burned her in the nipple, both nipples and genital area and whipped her with a belt on the buckle side of the belt." In a section titled "I came to the Emergency Department today because:" the hospital admission records contain a handwritten response by the complainant: "Assault by my baby's father."

The appellant argues that the admission of this evidence was erroneous because the perpetrator's identity was not relevant for purposes of medical treatment. According to the appellant: "It makes no difference whether it was done by [the appellant], the complainant's sister[,] or green men from Mars." However, the appellant does not contend that anyone else actually inflicted these injuries on the complainant. In his brief, the appellant contends that "[c]onsent was the only contested issue" at trial. Because identity was not an issue at trial, we hold that the appellant was not harmed by the admission of hearsay testimony naming him as the perpetrator.

Further, defense counsel elicited testimony about both the hairspray and the appellant's identity as the perpetrator during cross-examination of Keller.

Therefore, the appellant was not harmed by admission of similar testimony at other points in the trial. *See Lacaze*, 346 S.W.3d at 122; *Brooks*, 990 S.W.2d at 287.

We overrule the appellant's second, third, and fourth issues.

## CONCLUSION

Having overruled all of the appellant's issues on appeal, we affirm the judgment of the trial court.


/s/    William J. Boyce
Justice

Panel consists of Justices Boyce and McCally and Senior Justice Mirabal.[7]

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.