ACCEPTED
01-14-00337-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/16/2015 11:41:17 AM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00337-CR**
In the
**COURT OF APPEALS**
For the
**FIRST DISTRICT**
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

3/16/2015 11:41:17 AM

CHRISTOPHER A. PRINE
Clerk

| | | |
|---|---|---|
| **FAROUK DAVID ODARIKO** | § | **APPELLANT** |
| **V.** | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

**APPEAL FROM THE 400TH JUDICIAL DISTRICT COURT OF
FORT BEND COUNTY, TEXAS
TRIAL COURT NO. 11-DCR-058765A**

**STATE'S BRIEF**

*Counsel for Appellee, The State of Texas*
**JOHN F. HEALEY**
DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS
301 Jackson Street, Richmond, Texas 77469
(Tel.) 281-341-4460/(Fax) 281-238-3340

**JASON BENNYHOFF**
ASSISTANT DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS
301 Jackson Street, Richmond, Texas 77469
(Tel.) 281-341-4460/(Fax) 281-238-3340/jason.bennyhoff@fortbendcountytx.gov

**ORAL ARGUMENT NOT REQUESTED UNLESS GRANTED TO
APPELLANT**

i

## IDENTIFICATION OF PARTIES

Pursuant to Tex. R. App. P. 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

**Appellant:**
**FAROUK DAVID ODARIKO**

**Appellee:**
**THE STATE OF TEXAS**

**Counsel for Appellant:**
**JAMES STEVENS**
**(AT TRIAL)**

**DAVID DISHER**
**(ON APPEAL)**

**Address(es):**
**Stevens**
**P.O. Box 414**
**Richmond, Texas 77406**

**Disher**
**1167 FM 2144**
**Schulenberg, Texas 78956**

**Counsel for Appellee/State:**
**JOHN F. HEALEY, JR.**
**District Attorney of Fort Bend County, Texas**
**Fort Bend County District Attorney's Office**

**Address(es):**
**301 Jackson Street, Rm 101**
**Richmond, Texas 77469**

**IDENTIFICATION OF PARTIES** (cont.)

**MATTHEW BANISTER AND JASON BENNYHOFF**
**Assistant District Attorneys, Ft. Bend County, Tx.**
**(AT TRIAL)**

**JASON BENNYHOFF**
**Assistant District Attorney, Ft. Bend County, Tx.**
**(ON APPEAL)**

**JOHN J. HARRITY, III**
**Assistant District Attorney, Ft. Bend County, Tx.**

**Trial Judge:**
**The Hon. Clifford Vacek**
**400th Judicial District Court**
**Fort Bend County, Texas**

# TABLE OF CONTENTS

**SECTION**                                                                  **PAGE**

IDENTIFICATION OF PARTIES ........................................................................ ii

TABLE OF CONTENTS ................................................................................iv

INDEX OF AUTHORITIES................................................................................vi

STATEMENT REGARDING ORAL ARGUMENT............................................... vii

STATEMENT OF THE CASE................................................................................1

POINTS OF ERROR PRESENTED BY APPELLANT ...........................................2

STATEMENT OF FACTS ......................................................................................2

SUMMARY OF THE ARGUMENT ....................................................................19

RESPONSE TO APPELLANT'S FIRST POINT OF ERROR

      THE JURY'S VERDICT THAT APPELLANT WAS GUILTY OF THE
      OFFENSE OF AGGRAVATED ROBBERY WAS SUPPORTED BY
      LEGALLY SUFFICIENT EVIDENCE

      .......................................................................................................19

      Standard of Review.................................................................................19

      Argument and Authorities.......................................................................20

RESPONSE TO APPELLANT'S SECOND POINT OF ERROR

      THE JURY'S VERDICT THAT APPELLANT WAS GUILTY OF THE
      AGGRAVATED ROBBERY, AND IN PARTICULAR, THAT HE WAS
      AWARE THAT A DEADLY WEAPON WOULD BE USED OR
      EXHIBITED DURING THE ROBBERY, WAS SUPPORTED BY
      LEGALLY SUFFICIENT EVIDENCE

............................................................................................................24

Standard of Review.....................................................................................24

Argument and Authorities..........................................................................25

PRAYER      ..........................................................................................27

# INDEX OF AUTHORITIES

## Cases

*Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) ................... 20, 25

*Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992) ..................................23

*Holladay v. State*, 709 S.W.2d 194 (Tex. Crim. App. 1986)..................................26

*Houston v. State*, 663 S.W.2d 455 (Tex. Crim. App. 1984) ............................. 20, 25

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ................................................. 20, 25

*Lacaze v. State*, 346 S.W.3d 113, 117-18 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd)..........................................................................................................24

*Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)..............................26

*McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997) .............................23

*Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988)..................................22

*Suniga v. State*, No. 04-10-00776-CR, 2011 WL 4957955 at *2-3(Tex. App.—San Antonio Oct. 19, 2011, no pet.)..........................................................................24

*Vasquez v. State*, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001)..................................26

*Webb v. State*, 801 S.W.2d 529, 530 (Tex. Crim. App. 1990).......................... 20, 25

*Williams v. State*, No. 01-99-00908-CR, 2000 WL 637034 (Tex. App.—Houston [1st Dist.] May 18, 2000 no pet.) .......................................................................24

## Statutes
Tex. Code Crim. Proc. art. 38.14 ................................................................... 23, 27

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex. R. App. P. 39, the State does not request oral argument unless granted to Appellant.

In the
**COURT OF APPEALS**
For the
**FIRST DISTRICT**
At Houston


**FAROUK DAVID ODARIKO**          §                    **APPELLANT**

**V.**                                              §

**THE STATE OF TEXAS**            §                    **APPELLEE**


**APPEAL FROM THE 400TH JUDICIAL DISTRICT COURT OF FORT BEND COUNTY, TEXAS TRIAL COURT NO. 11-DCR-058765A**

## STATEMENT OF THE CASE

Appellant was charged in cause number 11-DCR-058765A with four counts of Aggravated Robbery with a Deadly Weapon alleged to have occurred on or about October 6, 2011. (1CR7-8). On Appellant pled "not guilty" to this indictment and his case proceeded to a trial by jury. (3RR9-11). Following a contested trial, Appellant was found "guilty" by the jury of all four counts of Aggravated Robbery with a Deadly Weapon. (1CR56-59). The case then proceeded to a contested punishment trial before the jury, and the jury assessed Appellant's punishment at 25 years' confinement in the Texas Department of Criminal Justice – Institutional Division, and no fine. (1CR64-67).

## POINTS OF ERROR PRESENTED BY APPELLANT

I.      "The evidence identifying Mr. Odariko was legally insufficient to convict Appellant of aggravated robbery." App. Br. at p. 12.

II.     "The evidence of the use or exhibition of a deadly weapon by Appellant was legally insufficient to convict Appellant of aggravated robbery." App. Br. at p. 12.

## STATEMENT OF FACTS

Ernesto Batista, a security officer for IBC bank, testified that on October 6, 2011, he was notified that the IBC bank branch at Highway 6 and West Bellfort in Fort Bend County, Texas had been robbed. (3RR27). Batista testified that he was responsible for maintaining and turning over security camera videos from that IBC bank location, and that he turned over the security camera footage to law enforcement. (3RR29-30). The surveillance camera videos were admitted without objection as State's Exhibit 1. (3RR32-33; 9RR at Ex. 1).

The security cameras showed an armed robbery taking place on October 6, 2011, carried out by multiple individuals carrying handguns. (3RR34-38; 9RR at Ex. 1). The security cameras also showed a man whom the tellers stated came in about ten minutes before the robbery, acting suspiciously. (3RR39).

Several still photographs pulled from the security camera videos were also introduced without objection. (3RR41-42; 9RR at Ex. 2-19). These photographs show the robbery in progress, and also show the suspicious male who entered the bank prior to the robbery. (3RR42-45; 9RR at Ex. 2-11).

9

On cross examination, Appellant's counsel conceded that the video from the bank's security cameras showed Appellant in the bank approximately ten minutes before the robbery. (3RR50-51; 9RR at Ex. 1, 9-11). On re-cross, Batista testified that Appellant was in the bank, according to the time stamp on the video, for approximately one minute. (3RR58-59).

Imran Yousef then testified that on October 6, 2011, he went into the IBC bank in question to withdraw some money. (3RR66-67). Yousef testified that before he withdrew his money, the teller was having a conversation with a person in front of him that struck him as suspicious. (3RR67). Yousef identified the portion of the video containing the footage of the person behaving suspiciously as being at 15:04:31. Shortly after this person left the bank, the bank robbery occurred. (3RR74).

Yousef indicated to a person in the courtroom when asked to identify the person in the video who was behaving suspiciously. (3RR83). Appellant's counsel pointed out that Yousef identified Appellant when he pointed to a person in the courtroom. (3RR99).

Detective McKinnon of the Fort Bend County Sheriff's Office was the lead investigator on the case. (4RR14-15). He testified that he began generating leads following the release of several of the still photographs from the bank robbery,

10

which identified several individuals by name, and also an individual known by the nickname, "Spook." (4RR45).

After he learned the nickname Spook, McKinnon released still photographs of the suspect known as Spook to the media, and received a call from a law enforcement officer who identified the suspect known as Spook as Farouk Odariko (Appellant). (4RR47). McKinnon also received several Crime Stoppers tips identifying Spook as Farouk Odariko. (4RR47). The suspect known as Spook, who McKinnon was able to identify as Appellant, was the person in the bank approximately ten minutes before the robbery occurred. (4RR48). McKinnon was also able to identify the vehicle Appellant drove on the day of the robbery as a silver Buick Lucerne. (4RR50).

McKinnon obtained arrest warrants for two of Appellant's co-defendants, Johnathan Simmons and Ashley Jackson, and took them into custody. (4RR64). McKinnon interviewed Simmons and Jackson and learned that the co-conspirators had met at a Holiday Inn hotel shortly before the robbery. (4RR70). McKinnon later interviewed another suspect, Amyillia Bruno, who confessed to her role in the robbery and confirmed her presence at the Holiday Inn prior to the robbery. (4RR72). Bruno told McKinnon that Farouk Odariko, or Spook, was also present at the meeting at the Holiday Inn.

McKinnon was ultimately able to identify all of the co-conspirators who met at the Holiday Inn, those being: Appellant, Karrmyne Barros, Ashley Jackson, Johnathan Simmons, Amyillia Bruno, and Dominique Blakely. (4RR76). McKinnon recovered a surveillance video from the Holiday Inn which confirmed what Jackson, Simmons and Bruno had told him about the meeting. (4RR76). The surveillance video from the Holiday Inn also showed the vehicles the co-conspirators left in, including a silver Buick Lucerne driven by Appellant. (4RR148).

Simmons also confessed to his role in the robbery and confirmed that Appellant was a co-conspirator in the robbery. (4RR84).

McKinnon was able to confirm that the co-conspirators had known one another before the day of the robbery. (4RR88). McKinnon was also able to confirm that several of the co-conspirators had a prior relationship with Appellant. (4RR138). In particular, McKinnon was able to confirm that Appellant and Johnathan Simmons knew one another from having been members of the same criminal street gang. (4RR138-39). McKinnon was also able to confirm that Appellant and Karrmyne Barros had known each other through their association with criminal street gangs. (4RR139-40).

On cross examination, McKinnon testified that two people, a teller named Merriyum Minhaj and a customer named Imran Yousef had noticed someone

unusual in the bank shortly before the robbery. (4RR90). Appellant's counsel conceded this was Appellant. (4RR90).

Several co-conspirators told McKinnon that Appellant had been waiting for them in his vehicle in the neighborhood behind the IBC bank during the robbery. (4RR123). Several co-conspirators told McKinnon that Appellant acted as a secondary getaway driver following the robbery. (4RR127).

McKinnon was able to verify that "Spook" was a nickname for Appellant (which his co-conspirators referred to him by). (4RR142). A photo of Appellant, showing a tattoo of the word "spook" on his neck was admitted as an exhibit. (4RR142; 9RR at Ex. 87).

The co-conspirators left the meeting at the Holiday Inn approximately 35 minutes before the robbery took place. (4RR165).

Dominique Blakley testified that he acted as a getaway driver in this robbery. (4RR193). Blakely identified his co-conspirators as Johnathan Simmons, Ashley Jackson, "Ace," Broussard, Karrmyne and "Spook." (4RR196-97). Blakley identified Appellant as being the co-conspirator he knew as "Spook." (4RR197). Blakely testified that Karrmyne and Appellant waited for the other co-conspirators in a nearby neighborhood while the robbery took place. (4RR197).

Blakely identified two of the armed robbers on the surveillance video as Johnathan Simmons and Ashley Jackson. (4RR198). Blakely testified that he

believed a third person in the bank was the co-conspirator he knew as "Ace." (4RR199).

Blakely testified that he waited for several co-conspirators to rob the bank, and then he took them to the nearby neighborhood where Karrmyne and Appellant were waiting. (4RR199-200).

Blakely testified that he met up with the other co-conspirators at a Holiday Inn prior to the robbery. (4RR204). The State then admitted, without objection, photographs from the Holiday Inn surveillance cameras as exhibits 51-84. (4RR207; 9RR at Ex. 51-84). Blakely testified that these photographs showed he and his fellow co-conspirators, including Appellant, leaving the Holiday Inn on the way to commit this robbery. (4RR207-08).

Blakely testified that they had originally planned to rob another location, but that location did not work out, so Appellant suggested they rob the IBC bank. (5RR30).

Johnathan Simmons then testified that he had taken part in this bank robbery, and was testifying against his co-conspirators in the hope of receiving more lenient treatment. (5RR42-43). Simmons, while reviewing the surveillance video from the bank, identified Amyillia Bruno or "Ace," Ashley Jackson or "Scoobie," and Broussard as having robbed the bank with him. (5RR47-49).

14

Simmons, while reviewing the surveillance video from the bank, identified the person who came in shortly before the robbery as "Spook" or Farouk. (5RR52). Simmons testified that one of the vehicles used in the robbery was Farouk's gray Buick Lucerne. (5RR56).

Simmons testified that the co-conspirators met up before the robbery at a Holiday Inn. (5RR56). Simmons, while reviewing surveillance video from the Holiday Inn, identified the co-conspirators at the Holiday Inn as Broussard, Ashley Jackson, himself, Karrmyne, Dominique, Farouk, and Amyillia. (5RR57-61; 9RR at Ex. 85).

Simmons identified Farouk and Karrmyne as being the people who walked out of the hotel and got into a gray car in the parking lot. (5RR62). Simmons, while watching this video, testified that it reflected all of the co-conspirators splitting up into three cars and all three cars driving out of the parking lot together. (5RR63-64).

Simmons testified that after a detour to Pearland, the group ended up outside the IBC bank. (5RR65). While they sat in the neighborhood, Farouk drove off, then came back a few minutes later and described what was inside the bank. (5RR68). Farouk said, "It's a go, it's good." (5RR68). Simmons took this to mean that the bank looked like a good place to rob. (5RR68). Simmons testified

that he and the other co-conspirators had discussed robbing a bank beforehand and had agreed to do so.  (5RR70).

Simmons testified that after the robbery, several of the robbers got out of Blakely's car in the nearby neighborhood and got into Farouk's car and then fled the area.  (5RR75).  Simmons testified that all of the co-conspirators later met up at Karrmyne's house.  (5RR76).  Simmons testified that they split up the money at Karrmyne's house.  (5RR76).  Simmons testified that Farouk was present at this meeting and received some of the money.  (5RR76-77).

Simmons met Farouk through Karrmyne.  (5RR78).  Simmons had known Farouk for about two months before the robbery.  (5RR78).  Simmons testified that the guns used in the robbery came from Karrmyne's house.  (5RR79).  Simmons testified they went through Farouk's hands and then on to Ashley Jackson who distributed them.  (5RR79).

Merriyum Minhaj was a teller at the bank on the day it was robbed. (5RR152).  Minhaj testified that the person who walked into the bank before the robbery, visible on the surveillance video at 15:04:36 (and previously acknowledged by Appellant's counsel to have been Appellant), drove into the bank parking lot from the direction of the nearby neighborhood.  (5RR162-63, 166). Minhaj testified that following her encounter with Appellant before the robbery, the robbers seemed to make directly for her teller station when they entered the bank.

(5RR163-64).  Appellant's counsel, during cross examination, again conceded Appellant was in the bank prior to the robbery.  (5RR186).

Amyillia Bruno then testified that she was involved in this robbery and had entered into a plea agreement on her charges which included the requirement that she testify at the trials of her co-conspirators.  (5RR190-91).  Bruno testified that she was called to take part in the robbery by Johnathan Simmons, who told her that Farouk was also involved.  (5RR194).  Bruno met with Simmons and Farouk prior to the robbery, and the group got guns from Farouk.  (5RR195-96).  Farouk then "cased" the bank prior to the robbery.  (5RR198).  Bruno identified the person in State's Exhibit 9 as being the person she knew as Farouk.  (5RR199; 9RR at Ex. 5). Bruno also identified the person she knew as Farouk as appearing in State's Exhibit 51, a still photograph from the Holiday Inn surveillance video.  (5RR201; 9RR at Ex. 51).

Bruno testified it was Farouk's idea to rob the IBC bank.  (5RR206).  Bruno testified that Farouk suggested robbing the IBC bank because he had an inside source who indicated that the bank was a good place to rob.  (5RR206).  Bruno testified that Farouk used his silver Buick in the robbery.  (5RR208).  Bruno also testified that the group met up at Karrmyne's house after the robbery to split the money, and Farouk got a cut of that money.  (5RR208-09).

Bruno then identified the person in state's Exhibit 9 and State's Exhibit 52 wearing the shirt that said "World" on it in both photos as being the person sitting in court wearing a black jacket. (5RR22).

Detective McKinnon was then recalled, and testified that the person on the Holiday Inn surveillance video at the 6:08 mark wearing the shirt with the words "World Class" on it was Appellant. (5RR28). McKinnon pointed out that Appellant was wearing the same distinctive shirt in the bank surveillance video at 3:05 p.m. (5RR28-29). McKinnon testified that the other person with Appellant on the Holiday Inn video at the 6:08 mark was Karrmyne Barros. (5RR29).

McKinnon reviewed the Holiday Inn video and identified all of the co-conspirators on the video at the Holiday Inn at the same time, including Appellant. (5RR33). McKinnon reviewed another portion of the Holiday Inn surveillance video then identified all of the co-conspirators leaving the Holiday Inn at the same time, including Appellant. (5RR36). McKinnon then reviewed the surveillance video of the Holiday Inn parking lot, State's Exhibit 86, and identified all of the co-conspirators and their vehicles leaving the parking lot at the same time, including Appellant and his silver Buick Lucerne. (5RR38-41).

McKinnon testified that although the co-conspirators who gave him statements were inconsistent in some respects, they were largely consistent, in particular in that they all mentioned the nickname "Spook." (5RR30-31).

## SUMMARY OF THE ARGUMENT

Appellant first argues that the State did not provide legally sufficient evidence on which a rational jury could base a finding that Appellant was involved in the robbery as a party. Appellant's point of error is without merit as multiple co-conspirators testified that Appellant was a willing participant in the robbery, and their testimony was corroborated by videotapes of Appellant at the bank and at the meeting place prior to the robbery.

Appellant argues in his second point of error that there is no evidence in the record that Appellant was aware that deadly weapons would be used in the commission of the robbery. This argument is without merit because two of Appellant's co-conspirators testified that Appellant provided (or at least saw and handled) the guns prior to the robbery.

### Response to Appellant's First Point of Error

### THE JURY'S VERDICT THAT APPELLANT WAS GUILTY OF THE OFFENSE OF AGGRAVATED ROBBERY WAS SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE

### Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, the critical inquiry is whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319

19

(1979); *Webb v. State*, 801 S.W.2d 529, 530 (Tex. Crim. App. 1990). The appellate court views the evidence in the light most favorable to the verdict, whether the case was proven by direct or circumstantial evidence. *Houston v. State*, 663 S.W.2d 455 (Tex. Crim. App. 1984). Following the Court of Criminal Appeals' decision in *Brooks v. State*, legal sufficiency is the only standard for reviewing the sufficiency of a trial court judgment, and factual sufficiency has been entirely subsumed within it. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010).

**Argument and Authorities**

Appellant's first point of error is that "The evidence identifying Mr. Odariko was legally insufficient…." (App. Br. at p. 34). Appellant explains his point of error thusly, "Only Dominique Blakely, an accomplice, was able to identify the Appellant as reflected in the record. Since the identification element was never legally proved, Appellant should receive a jury verdict of not guilty." (App. Br. at p. 40).

Appellant's point of error, on its face, seems to be premised on the notion that a jury could not rationally have found Appellant guilty of the offense because only one witness actually pointed to Appellant and identified him on the record as the person he was referring to. This recitation of the facts, needless to say, leaves out the great many items of evidence which were introduced that the jury could have reasonably relied on to identify Appellant as being a party to the robbery.

Appellant's point of error can also be read to include an argument that the evidence corroborating his co-conspirators' statements was legally insufficient. This claim also ignores the significant items of evidence which corroborated Appellant's co-conspirators' statements. The State will address both of these arguments out of an abundance of caution.

*Legal sufficiency of evidence of identity*

The items of evidence which the jury could have relied on finding that Appellant was involved in the robbery several videotapes and photographs (on which Appellant is clearly visible) (*See, e.g.,* 9RR at Ex. 1, 9-11, 51-53, 56-61, 72-74, 85-87) and that Appellant was identified by nickname and legal name by multiple co-conspirators, and that he was identified by nickname and legal name in several Crime Stoppers tips, and that the jury had a booking photo of Appellant, which showed a tattoo on his neck of the word, "Spook," which was established as Appellant's nickname, and that Appellant's trial counsel conceded that it was Appellant who was visible in the videotapes, and that two of the witnesses identified a person in the courtroom as being the person they were referring to (though the record does not reflect counsel for the State asking that the trial court take notice of who they pointed to).

Appellant, as he concedes in his brief, was identified in the conventional courtroom fashion by Dominique Blakely, and the jury then had the videotapes of

Appellant, and his photographs, and his name being mentioned in Crime Stoppers tips, and his booking photograph on which to rely in making a determination that Appellant was in fact the person involved in this robbery. Of course, the jury could compare the face on the surveillance videos and in the photographs to the person sitting in front of them in the courtroom in making their determination that Appellant was in fact the same person visible in those videotapes and photographs.

The jury therefore had sufficient evidence with which to identify Appellant as the person involved in this robbery.

*Legal sufficiency of corroborative evidence*

Appellant's brief is accurate in stating that the statements of the co-conspirators needed to be corroborated. As Appellant also accurately points out, the trial court gave an appropriate accomplice witness instruction. (1CR49-50; Tex. Code Crim. Proc. art. 38.14). That instruction properly instructed the jury that Appellant could not be convicted solely on accomplice witness testimony, but that such testimony had to be corroborated by other evidence "tend[ing] to connect" Appellant with the commission of the offense. (1CR49-50). As the Court of Criminal Appeals held in *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988):

> In applying the test of the sufficiency of the corroboration, each case must be considered on its own facts and circumstances.
> All the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary. The corroborative evidence

may be circumstantial or direct. The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test. It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. Insignificant circumstances sometimes afford most satisfactory evidence of guilt and corroboration of accomplice witness testimony. (Internal citations omitted).

The Court of Criminal Appeals has since further delineated the outlines of what constitutes sufficient corroborative evidence in *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992) (presence at a crime scene combined with other suspicious circumstances constitutes sufficient corroboration) and *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997) (evidence that defendant was in presence of accomplice at or near the time or near the place of the crime is proper corroborating evidence).

The videos from the Holiday Inn showed Appellant leaving the Holiday Inn in the company of all of the other co-conspirators shortly before the robbery. These videos also showed Appellant going to a vehicle with one of his co-conspirators and driving out of the Holiday Inn parking lot in a caravan with the other co-conspirators. Appellant then appears in the bank that his co-conspirators robbed approximately ten minutes before the robbery, inquiring about opening an account, but then leaving the bank when asked for identification. This evidence provided sufficient corroboration on which the jury could rationally base a finding that Appellant was guilty of this robbery as a party. *See, e.g.*, *Id*., *Suniga v. State*,

23

No. 04-10-00776-CR, 2011 WL 4957955 at *2-3(Tex. App.—San Antonio Oct. 19, 2011, no pet.) (not designated for publication); *Williams v. State*, No. 01-99-00908-CR, 2000 WL 637034 (Tex. App.—Houston [1st Dist.] May 18, 2000 no pet.) (not designated for publication); *see also Lacaze v. State*, 346 S.W.3d 113, 117-18 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

The evidence was legally sufficient to establish that Appellant was a party to this offense. Appellant's first point of error should be overruled.

**Response to Appellant's Second Point of Error**

**<u>THE JURY'S VERDICT THAT APPELLANT WAS GUILTY OF THE AGGRAVATED ROBBERY, AND IN PARTICULAR, THAT HE WAS AWARE THAT A DEADLY WEAPON WOULD BE USED OR EXHIBITED DURING THE ROBBERY, WAS SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE</u>**

**Standard of Review**

In reviewing the legal sufficiency of the evidence to support a conviction, the critical inquiry is whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Webb*, 801 S.W.2d at 530. The appellate court views the evidence in the light most favorable to the verdict, whether the case was proven by direct or circumstantial evidence. *Houston*, 663 S.W.2d at 455. Following the Court of Criminal Appeals' decision in *Brooks v. State*, legal sufficiency is the only standard for reviewing the sufficiency

24

of a trial court judgment, and factual sufficiency has been entirely subsumed within it. *Brooks*, 323 S.W.3d at 894-95.

## Argument and Authorities

Appellant's argument in this point of error is premised on the notion that there was no evidence in the record establishing that Appellant was aware that a deadly weapon would be used or exhibited in the commission of this aggravated robbery. (App. Br. at p. 44). Appellant states "The State presented no evidence that the accomplices exhibited any weapon to appellant or otherwise made appellant aware of any firearm at any time before or after they brandished their weapons … inside the bank." (App. Br. at p. 44).

Appellant's point of error is meritless because it relies on simply ignoring the trial testimony. There was testimony that Appellant provided the guns to his co-conspirators, saw the guns, took custody of the guns, and was the owner of at least one of the guns used in the robbery. (*See, e.g.*, 5RR79, 98, 195-96, 205).

Appellant, it could be argued, is inartfully arguing that the State did not corroborate the accomplice witness testimony regarding the "aggravated" element of the offense. However, even presuming that this is the argument Appellant is attempting to make, it is without merit because the Texas Code of Criminal Procedure does not require that every element of an offense which is proven up by accomplice witness testimony be corroborated.

Texas Code of Criminal Procedure article 38.14 requires only that accomplice witness testimony be "corroborated by other evidence tending to connect the defendant with the offense committed…." Neither that article, nor the case law interpreting it, have required that every element of an offense be corroborated by non-accomplice evidence. *See, e.g.*, *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986); *Holladay v. State*, 709 S.W.2d 194 (Tex. Crim. App. 1986). In particular, the Texas Court of Criminal Appeals has held that accomplice witness testimony regarding a deadly weapon finding need not be corroborated. *Vasquez v. State*, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001).

Even if such corroboration were required, there was certainly corroborative evidence here in that Appellant was plainly visible in several videotapes and photographs both at the Holiday Inn shortly before the robbery with all of his co-conspirators and in the bank shortly before it was robbed. (*See, e.g.*, 9RR at Ex. 1, 9-11, 51-53, 56-61, 72-74, 85-87). There was also corroborative evidence in that the co-conspirators statements regarding the guns being used (and being real) were corroborated by the testimony of the victims who had guns pointed at them and by the videotapes and photographs showing those guns. (*See, e.g.*, 4RR173; 5RR153; 9RR at Ex. 1, 2, 6, 8, 12, 15, 18).

Appellant's second point of error relies on ignoring the trial testimony, or alternatively, on an implied suggestion that this Court revisit *Vasquez* and

overruled the Court of Criminal Appeals' holding that accomplice witness testimony regarding deadly weapon finding need not be corroborated. In either case, this point of error is without merit and should be overruled.

## **PRAYER**

Wherefore, premises considered, Appellee prays that Appellant's points of error be overruled and his conviction and sentence be affirmed in all things.

Respectfully submitted,

**John F. Healey, Jr.**

 /s/ Jason Bennyhoff
**Jason Bennyhoff**
Assistant District Attorney
Fort Bend County, Texas
S.B.O.T. No. 24050277
301 Jackson Street Room 101
Richmond, Texas 77469
281-341-4460 (office)
281-341-8638 (fax)

# CERTIFICATE OF SERVICE

I, Jason Bennyhoff, do hereby certify that a true and correct copy of the foregoing Brief was sent to counsel for the Appellant on March 16, 2015, via email by way of electronic service through EFile Texas at the email address below.

David Disher
disherdave@aol.com
Counsel for Appellant

/s/ Jason Bennyhoff
Jason Bennyhoff

**Certificate of Compliance with Texas Rule of Appellate Procedure 9.4(i)(3)**
In accordance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Jason Bennyhoff, hereby certify that the foregoing electronically created document has been reviewed by the word count function of the creating computer program, and has been found to be in compliance with the requisite word count requirement in that the entire document is 5,031words.

/s/Jason Bennyhoff

Jason Bennyhoff